[Civ. No. 6262. Fifth Dist. June 24, 1983.]

PAULA J. LEACH et al., Plaintiffs and Appellants, v.
DRUMMOND MEDICAL GROUP, INC., et al.,
Defendants and Respondents.

## Counsel

Gary Williams and Fred Okrand for Plaintiffs and Appellants.

Borton, Petrini & Conron, Nicholas K. Lowe and Rocky K. Copley for Defendants and Respondents.

## Opinion

**HAMLIN, J.—**

### The Case

On July 10, 1980, plaintiffs filed a complaint for declaratory and injunctive relief and for damages. The complaint alleged four causes of action. The first cause of action alleged violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.); the second alleged unlawful discrimination by an enterprise affected with a public interest under common law principles; the third alleged unlawful discrimination by a monopoly under common law principles; and the fourth alleged interference with the plaintiffs' right to petition their government. On July 23, 1980, a first amended complaint was filed which did nothing more than add exhibit A, a copy of a letter to plaintiffs from one of the defendants. That letter had been referred to in the body of the original complaint but had not been attached.

Defendants demurred to plaintiffs' first amended complaint, alleging that the complaint failed to state a cause of action, that it was uncertain and ambiguous and that it was a sham. Defendants' demurrer was sustained without leave to amend on the ground that the complaint failed to state a cause of action. A judgment of dismissal was entered, and plaintiffs appealed from that judgment.

## THE FACTS

■ The facts are taken from plaintiffs' complaint because "[r]espondent's demurrer is to be treated as admitting the truthfulness of all properly pleaded factual allegations of the complaint, but not contentions, deductions or conclusions of fact or law. [Citations.]" (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 827-828 [134 Cal.Rptr. 839].) Both plaintiffs are residents of Ridgecrest, California. Paula J. Leach has extremely low blood pressure, hypoglycemia and diabetes. These ailments cause periodic blackouts. She also suffers from chronic diarrhea and chronic bronchitis. Plaintiff Robert W. Leach has a high triglyceride count in his bloodstream for which he must take medication on a regular basis. He requires periodic checkups to insure that this medication is working.

Defendant Drummond Medical Group, Inc. (medical group) is a California corporation doing business in Ridgecrest, California. Plaintiffs allege that the medical group possesses virtual monopoly control over the provision of medical care in the Town of Ridgecrest. In support of this contention, plaintiffs allege that the nearest comparable medical facility which will accept patients from Ridgecrest is approximately 100 miles away. Defendant Drummond Medical Center, Inc. (medical center) is also a California corporation. Plaintiffs allege on information and belief that the medical center is the alter ego of the medical group. Defendant Robert E. Campbell is the medical management consultant of the medical group.

On December 4, 1978, plaintiffs read an article in the Ridgecrest newspaper which stated that various state agencies were investigating the care available at the emergency room of the Ridgecrest Community Hospital. That article mentioned Mr. George Willi, a health facilities representative with the California Department of Health Services, Licensing and Certification Division (the department). In the belief that Mr. Willi had the authority to investigate and correct deficiencies in hospitals and licensed physicians, plaintiffs wrote a letter dated December 15, 1978, to Mr. Willi describing their experiences in the emergency room at Ridgecrest Community Hospital. Plaintiffs' letter also recited the history of treatment of a small child who was then in the plaintiffs' care by a specifically named doctor who was a member of the medical group. However, the letter contained no allegations regarding the medical group or the medical center.

In due course, plaintiffs received a letter from the department. That letter notified plaintiffs that the department would investigate their report concerning the Ridgecrest Community Hospital emergency services. It also informed plaintiffs that the Board of Medical Quality Assurance of the De-

partment of Consumer Affairs (BMQA) was the proper agency to investigate reports concerning individual physicians and that their earlier communication was also being referred to that agency. Within a month thereafter, plaintiffs received a letter from the BMQA stating that it was opening an investigation of the doctor named in plaintiffs' letter to the department.

About six months after plaintiffs received notice of the two separate investigations, Mrs. Leach received a certified letter from the medical group, signed by defendant Campbell, stating that because of plaintiffs' allegations to the BMQA the medical group would no longer provide medical services to Mrs. Leach or any member of her immediate family. The text of the letter which defendant Campbell sent to plaintiffs is set forth below at footnote 1.[1]

## DISCUSSION

### Nature of the Review

Initially we note that the plaintiffs' appeal is from a judgment dismissing their first amended complaint based on the trial court's order sustaining defendant's demurrer without leave to amend. The first amended complaint is the functional equivalent of plaintiffs' first complaint. The trial court's reasons for sustaining the demurrer without leave to amend were (1) the personal nature of the physician-patient relationship which precludes compulsory continuance of the relationship, (2) the nonemergency nature of the treatment denied to the plaintiffs, and (3) the determination that the defendants' actions did not constitute discrimination as contemplated by the Unruh Civil Rights Act and did not constitute a violation of the plaintiffs' constitutional rights. Defendants have alleged in their brief in support of the trial court's action certain factual matters which are not properly before this court. (*Cravens* v. *Coghlan* (1957) 154 Cal.App.2d 215 [315 P.2d 910]; see also *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 712-713, fn. 1 [104 Cal.Rptr. 96].) In the *Cravens* case the court cogently stated the applicable rule: "In the present case the trial court had no power, on demurrer, to pass upon a factual issue that could be presented only by answer. It is an elementary rule that the sole function of a demurrer is to test the sufficiency of the challenged pleading. It cannot,

---

[1]"Due to allegations made by you to the Board of Medical Quality Assurance regarding physicians at Drummond Medical Group, it would appear that we can no longer maintain a proper physician-patient relationship.

"Please be informed that we will no longer provide medical services to you or any member of your immediate family. Therefore, we ask that you provide us with a records release authorization, (obtainable from our record room) informing us of the doctor to whom you would like your records sent.

"We will continue to treat you on an 'emergency only' basis for thirty days from the above date to allow you to make your arrangements."

properly, be addressed to or based upon evidence or other extrinsic matters. A defendant is not permitted to allege facts in his demurrer which, if true, would make the complaint vulnerable." (*Cravens* v. *Coghlan, supra,* at p. 217.)

 The standards of appellate review of a trial court's order sustaining a demurrer without leave to amend are well established. (See *McGee* v. *McNally* (1981) 119 Cal.App.3d 891, 896 [174 Cal.Rptr. 253]; *Larwin-Southern California, Inc.* v. *JGB Investment Co.* (1979) 101 Cal.App.3d 626 [162 Cal.Rptr. 52]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 845, p. 2450.)

In *Larwin-Southern California, Inc.* v. *JGB Investment Co., supra,* 101 Cal.App.3d 626, a contract action, the trial court sustained the defendants' demurrer on the basis that " 'material portions of the alleged contract are indefinite and uncertain . . . and that the alleged contract is illusory.' " (*Id.,* at p. 634.) In reversing, the appellate court stated: "The trial court sustained defendants' demurrer without offering plaintiff an opportunity to amend its complaint. The legal standards used in assessing, on appellate review, the propriety of a trial court's order sustaining a demurrer without granting leave to amend have been articulated as follows: 'An order sustaining a demurrer without leave to amend "ordinarily constitutes an abuse of discretion, if there is a *reasonable possibility* that the defect can be cured by amendment." [Citation.] Liberality in permitting amendment is the rule, not only where a complaint is defective as to form but also where it is deficient in substance, *if a fair prior opportunity to correct the substantive defect has not been given.* [Citations.]' [Citation.] Of course, ' "the plaintiff has not had a fair opportunity . . . [to cure a substantive defect] . . . where the demurrer [is] sustained to [its] first complaint." [Citation.]' [Citations.]" (*Id.,* at p. 635, brackets in original.)

### Compelling a Physician and Patient Relationship

In addition to their contentions directed at the four specific causes of action which plaintiffs attempt to allege in their complaint, defendants argue generally that plaintiffs can never amend their complaint so as to be entitled to injunctive relief. Defendants base this argument on the fact that the physician-patient relationship is predicated upon trust and confidence, the loss of which renders continuation of the relationship impossible. Alternatively, they contend the physician-patient relationship is characterized as one requiring personal services. Under the specific facts of this case we reject the argument however the physician-patient relationship is characterized.

 We think it is significant in this case that plaintiffs' complaint does not seek to compel any individual physician either to undertake or continue

a personal physician-patient relationship with either of them. Defendant Campbell's letter, attached as exhibit A and incorporated into the complaint, indicates an ongoing relationship is being severed by the unilateral action of the defendants. Accordingly, defendants improperly rely on *Agnew* v. *Parks* (1959) 172 Cal.App.2d 756 [343 P.2d 118] to support the trial court's order sustaining the demurrer without leave to amend. There the court considered the existence of a duty to enter into an agreement to render services as a medical expert merely upon request and in the absence of any prior relationship. Defendants' reliance on that case is also misplaced because the plaintiffs in the *Agnew* case were seeking to engage the services of a physician to provide expert testimony as an independent physician in plaintiffs' medical malpractice case. We believe that the public policy considerations considered in *Agnew* to shelter a physician from being compelled to provide expert testimony are readily distinguishable from public policy considerations applicable to compel the provision of medical services which plaintiffs allege in the instant case are necessary to protect their health and welfare.

Similarly, we consider the other authorities on which defendants rely as inapposite because the defendants in this case are two interrelated corporations with medical doctors as employees. Defendants could be compelled to provide medical services to plaintiffs without the court ordering performance of such services by a specific doctor. Thus the basis for the strictures against judicial compulsion of personal service contracts does not exist in this case. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, §§ 48-49, pp. 5270-5271 for a discussion of the nature of personal service contracts which are not subject to specific enforcement.) The medical services which are being terminated by defendants are provided by the medical group. The complaint contains nothing to indicate that performance is personal to any physician, and no physician has been named in the complaint. Plaintiffs seek to obtain medical services which are available to the public generally, and they do not seek to limit their receipt of services to any named physician. There is no contract for personal services as opposed to a general contract to provide medical care on the same basis that it is provided to the public generally.

Finally on this point defendants ignore the decision in *Washington* v. *Blampin* (1964) 226 Cal.App.2d 604 [38 Cal.Rptr. 235]. There the court, in concluding that a medical practice was judicially brought within the broad scope of the Unruh Civil Rights Act by the provisions of Civil Code section 51, stated: "This reasoning points inevitably to the conclusion that the phrase 'business establishments of every kind whatsoever' was intended to embrace professional services as well as real estate sales." (*Id.*, at p. 608.)

Before reviewing the allegations of the individual causes of action, we consider the alternative basis which the court stated for its order sustaining

the demurrer without leave to amend. We refer to the determination of the trial court that "this is not a situation involving emergency treatment." That determination is inconsistent with the allegations of the complaint. Plaintiffs assert certain medical disabilities which defendants improperly characterize as minor. Given the potential for severe complications, diabetes can hardly be considered, either by medical or nonmedical persons, as a minor ailment. Additionally, the letter from defendant Campbell indicates that emergency treatment will be provided plaintiffs for only a period of 30 days after receipt of the letter to provide them an opportunity to arrange for alternate care. The clear and inescapable inference from this statement is that after the expiration of 30 days defendants will provide no emergency treatment to these plaintiffs. The complaint also establishes that alternate care is not an option, as defendants provide the only medical services available in the immediate area. We therefore conclude that the facts before the trial court at the time of its ruling sustaining the demurrer without leave to amend did not support the trial court's determination that this was not a situation involving emergency treatment.

### Cause of Action Under the Unruh Civil Rights Act

■ The Unruh Civil Rights Act, Civil Code section 51, provides in pertinent part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

As pointed out above, medical practices and physician services have been included under the umbrella of "business establishments of every kind whatsoever" by the decision in *Washington* v. *Blampin, supra,* 226 Cal.App.2d 604. Additionally, the California Supreme Court has repeatedly held that the classes of persons expressly itemized in Civil Code section 51 are "illustrative rather than restrictive." (*Marina Point Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 732 [180 Cal.Rptr. 496, 640 P.2d 115]; *In re Cox* (1970) 3 Cal.3d 205, 216 [90 Cal.Rptr. 24, 474 P.2d 992].) Although defendants accept the fact that plaintiffs, in obtaining medical services, are members of a class of persons protected by the Unruh Civil Rights Act, they argue that fact is not determinative of the issues on appeal. Rather, they contend that excluding the plaintiffs from medical services provided by defendants is not arbitrary discrimination and therefore is not barred by the Unruh Civil Rights Act. Defendants rely upon *In re Cox, supra,* 3 Cal.3d 205 where the Supreme Court stated: "In holding that the Civil Rights Act forbids a business establishment generally open to the public from arbitrarily excluding a prospective customer, we do not imply that the establishment may never insist that a patron leave the premises. Clearly, an entrepreneur need not

tolerate customers who damage property, injure others, or ortherwise disrupt his business. A business establishment may, of course, promulgate reasonable deportment regulations that are rationally related to the services performed in the facilities provided." (*Id.*, at p. 217, fn. omitted.)

Defendants seek to characterize their denial of services to plaintiffs as one permissible under the rationale of *Cox, supra,* by going outside the allegations of the complaint. The facts on which defendants rely in this connection are not only outside the face of the complaint but also cannot reasonably be inferred from the facts alleged. Defendants argue that plaintiffs' conduct in publicly criticizing the defendants has irreparably damaged the physician-patient relationship. The difficulty with that argument is that there is nothing on the face of the complaint to indicate that plaintiffs publicly criticized anyone. The complaint simply establishes that plaintiffs wrote a letter to a state agency which had already commenced an investigation of the emergency room treatment at the Ridgecrest Community Hospital. Plaintiffs did not cause the investigation to be initiated. They merely addressed their concern to the appropriate state agency. Moreover, the complaint does not state anything to indicate that this letter was ever made public or was disseminated in any way beyond the state agencies involved. Therefore it cannot be concluded that there was properly before the trial court any evidence of public criticism of these defendants.

Additionally, defendants attempted to allege that their medical services are not open to the general public but are limited "to patients of those physicians who are authorized to use the facilities" and to those patients who "demonstrate the financial ability, courteous deportment and willingness to cooperate that is necessary to maintain a proper physician-patient relationship." Again, these facts are outside the face of the complaint, and they are also not the subject of a reasonable inference from the facts alleged. But even if we assume it is a matter of common knowledge that most medical groups limit admissions to patients of those doctors authorized to use the facilities and to patients who are willing to pay and to deport themselves courteously, that cannot justify the limitation of services in this case. Simply because a business requires payment does not mean that it is a business not open to the public generally. Following the lead of the United States Supreme Court in *Marsh* v. *Alabama* (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276], the California Supreme Court stated in *Cox*: "In undertaking to provide the necessities and amenities of life, the shopping center performs an important public function. In some areas the public must rely upon the shopping center as its sole source of food, clothing and other commodities. If a shopping center arbitrarily denies individuals the right to purchase essentials, these people may have no practicable alternative source of supply. Our modern society has become so interdependent and interrelated that

those who perform a significant public function may not erect barriers of arbitrary discrimination in the marketplace." (*In re Cox, supra,* 3 Cal.3d at p. 218.)

A medical group which provides the only medical services within a given geographical area must be considered to perform a more important function than a local shopping center. The potential necessity for emergency medical treatment is in all respects as essential as the right to purchase food and conceivably may be much more critical in the maintenance of individual life. We therefore conclude that plaintiffs' complaint did state a valid cause of action for violation of the Unruh Civil Rights Act. The demurrer to the first cause of action should have been overruled.

### Enterprise Affected With a Public Interest

Plaintiffs' complaint alleges "Defendant Drummond Medical Group, Inc. is an enterprise affected with a public interest. As such the defendants are under a common law duty to serve all customers without discrimination. The defendants' arbitrary refusal to serve the plaintiffs is in violation of that common law duty."

The Supreme Court in *In re Cox, supra,* 3 Cal.3d 205, discussed the historical background of the Unruh Civil Rights Act: "The early common law decisions regarded certain enterprises as 'public' or 'common' callings, or, to use a later phrase, 'affected with a public interest.' These undertakings 'held themselves out' as providing a particular product or service to the community. [Citations.] The common law attached to these enterprises 'certain obligations, including—at various stages of doctrinal development—the duty to serve all customers on reasonable terms without discrimination and the duty to provide the kind of product or service reasonably to be expected from their economic role. . . .' [Citations.]" (*Id.,* at p. 212.)

Because the Unruh Civil Rights Act is a codification of the common law doctrine concerning enterprises affected with a public calling, plaintiffs' second cause of action is an alternative, common law pleading which rests upon the same bases as their cause of action stated under the Unruh Civil Rights Act. Our discussion in the preceding section concerning violation of the Unruh Civil Rights Act is therefore applicable to the alternative, common law pleading of the second cause of action. We therefore conclude for the same reasons that plaintiffs also state a cause of action for the violation of the duty of an enterprise affected with a public interest to serve all members of the public on reasonable terms without discrimination. Defendants' demurrer to plaintiffs' second cause of action should have been overruled.

## Monopoly Control Over Medical Care

In plaintiffs' third cause of action they allege "Defendant Drummond Medical Group, Inc. posesses [*sic*] a virtual monopoly over the provision of medical care in Ridgecrest and the surrounding area. As the possessor of this monopoly defendants are under a common law duty to serve all customers without discrimination. The defendants' arbitrary refusal to serve the plaintiffs is a violation of that common law duty."

The common law duty alleged by plaintiffs does exist. The duty was first articulated by the California Supreme Court in *James* v. *Marinship Corp.* (1944) 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]. There the court considered the claim of various black laborers who were excluded from union membership because of their race. In upholding the claim of the black laborers against the claim of the union that it was not a "public service business" the court stated: "Where, as here, a labor union has attained a monopoly of the labor supply through closed shop agreements, such a union, like a public service business, may not unreasonably discriminate against Negro workers for the sole reason that they are colored persons." (*Id.*, at p. 740.)

The rationale of *Marinship* was recently applied in *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 [156 Cal.Rptr. 14, 595 P.2d 592]. In that case certain persons alleged that a public utility had discriminated against them in employment because of their sexual orientation. The Supreme Court stated: "Third, the prohibition against discrimination in [Public Utilities Code] section 453, subdivision (a) finds its origin in the common law doctrine which restricted monopolistic power; accordingly, that section expressly condemned discrimination by the utility as to rates and service. But the common law doctrine is a dynamic one and it has developed to encompass discrimination in employment as well as in rates and service. That development gives further content and substance to the sweeping language of section 453, subdivision (a) which exorcises discrimination 'in any respect'; pursuant to the thrust of the common law, that section thus covers discrimination in employment by a public utility." (*Id.*, at pp. 480-481.)

A medical corporation which provides the only medical services in a given geographical area appears to be precluded from discrimination in providing services under the rationale of the *Marinship* case. However, we agree with defendants' contention that "[a]ppellants [plaintiffs] have not alleged sufficient facts in their complaint to show a monopoly exists in order to impose such a duty upon the respondents [defendants]." While defendants' argument compels the conclusion that defendants' demurrer should have been

sustained, it also constitutes an implied admission that the trial court abused its discretion as to the third cause of action when it sustained the demurrer without leave to amend. The conclusional allegation that the medical group possesses a virtual monopoly over the provision of medical care in Ridgecrest and the surrounding area will not withstand the demurrer, but it certainly supports a reasonable inference that additional facts could be alleged to establish the existence of such a monopoly. Allegation of the number of other hospitals or emergency rooms available to the residents of Ridgecrest, their distance from Ridgecrest, available individual doctors in Ridgecrest, their number and whether they provide emergency care, could probably cure the defect which justified the sustaining of the demurrer to the third cause of action as stated in the initial complaint. It would then be reasonable to conclude from the court's opinion in *Gay Law Students, supra,* 24 Cal.3d 458, that the dynamic common law doctrine restricting the power of monopolies could be applied to the instant case.

As to this cause of action also, we reject defendants' earlier argument that they have the right to impose reasonable restrictions on their business which do not discriminate arbitrarily. The total exclusion of plaintiffs and their immediate family from medical care because the plaintiffs wrote a letter to a state agency investigating the quality of such care is not reasonably related to the maintenance of the defendants' business, and it is therefore not a permissible restriction.

We are not persuaded from this conclusion by either of the cases on which defendants rely, *Saxer* v. *Philip Morris, Inc.* (1975) 54 Cal.App.3d 7 [126 Cal.Rptr. 327] and *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305 [70 Cal.Rptr. 849, 444 P.2d 481]. Both of those cases involve violations of the Cartright Act concerning unfair restraint of trade. Neither case addressed the common law duty of a monopoly to treat all patrons without discrimination. Furthermore, both of these cases recognized the great liberality generally afforded to cure defective pleadings by amendment and only limited that liberality (by sustaining the order of the trial court that demurrers be sustained without leave to amend) when the appellants/plaintiffs demonstrated their unwillingness or inability to amend to cure those defects specified in the sustaining of three previous demurrers. As the instant demurrer was sustained without leave to amend to plaintiffs' first complaint, no such unwillingness or inability is evident in this case.

We conclude that the demurrer to the third cause of action should have been sustained with leave to amend to allege additional facts to support plaintiffs' conclusional allegation that defendants possess virtual monopoly control of medical care in Ridgecrest, California.

*Constitutional Right to Petition for Redress of Grievances*

■ In their fourth cause of action plaintiffs allege that by refusing to provide them services based upon plaintiffs' contact with a state agency investigating the quality of medical care provided in Ridgecrest, California, defendants unlawfully interfered with the plaintiffs' exercise of their right to petition their government for redress of grievances. Plaintiffs point out that this right is guaranteed to California citizens by article I, section 3 of the California Constitution which provides "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." Defendants argue, however, that this cause of action must fail because there has been no state action, and state action is a prerequisite for a claim for abridgement of constitutional rights. We are not persuaded that state action is a necessary allegation under all circumstances.

In *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341] the California Supreme Court upheld the right of high school students to locate themselves on the private property of a shopping center for the purpose of soliciting signatures on petitions. There was no question in *Robins* that the shopping center was privately owned and that the California Supreme Court had previously determined that the rights of the property owner took precedence over the right to freedom of speech guaranteed by the First Amendment to the federal Constitution. (*Diamond* v. *Bland* (1974) 11 Cal.3d 331 [113 Cal.Rptr. 468, 521 P.2d 460].) The Supreme Court overruled *Diamond* and determined that greater protections were available under the California Constitution than under the federal. The court held that to require shopping center owners to permit expressive activity on their property assured that those First Amendment rights would retain their preferred position. The court noted that the rights of a private property owner may be subjected to state control where the good of society requires it. That the court in *Robins* was concerned with something more than the exercise of freedom of speech appears from the following excerpt from the court's opinion: "In assessing the significance of the growing importance of the shopping center we stress also that to prohibit expressive activity in the centers would impinge on constitutional rights beyond speech rights. Courts have long protected the right to petition as an essential attribute of governing. [Citation.]" (*Robins* v. *Pruneyard Shopping Center, supra,* at p. 907.)

Nothing in the *Robins* opinion causes us to believe that plaintiffs could not amend their fourth cause of action to state a cause of action. The exemption in *Robins* of an "individual homeowner or the proprietor of a modest retail establishment" (*id.,* at p. 910) cannot reasonably be considered to

benefit the medical group as the provider of the only medical services within a geographical area. Similarly, the limitation in *Robins* on the right to freedom of expression to orderly processes which do not obstruct the operation of the business does not appear to be a significant hurdle for plaintiffs in this action. The complaint to which the demurrer was sustained contains no allegations that would support an inference that the plaintiffs in any way disrupted the operation of defendants' business by contributing to an already ongoing investigation.

In concluding that the demurrer to the fourth cause of action should have been sustained with leave to amend, we recognize also the possibility plaintiffs may be able to amend their complaint to allege state action based on receipt of federal funds. (See *Simkins* v. *Moses H. Cone Memorial Hospital* (4th Cir. 1963) 323 F.2d 959.)

Finally, in regard to plaintiffs' right to petition their government for redress of grievances, we are not persuaded by defendants' argument that because plaintiffs have already exercised their right to petition, defendants have not interfered with plaintiffs' right. Defendants argue further, as indeed they must, that their actions therefore do not have a chilling effect on these plaintiffs.

In *Adcock* v. *Board of Education* (1973) 10 Cal.3d 60 [109 Cal.Rptr. 676, 513 P.2d 900] a teacher challenged his transfer to a different school which was based upon his criticism of certain policies of the transferring school. The Supreme Court affirmed the decision of the trial court that the teacher be ordered reinstated at the original school. The Supreme Court stated in part: "Adcock's speech did not pose a threat to interests of the school district which would justify a speech limitation. So far as appears from the record, all of his criticisms were made at a proper time and in an appropriate place and manner. His speech which resulted in friction was not speech that occurred in the classroom or that affected or interfered with his teaching." (*Id.*, at p. 69.)

In the instant case plaintiffs' complaint alleges no facts which would support an inference that the plaintiffs' criticisms of the care available at Ridgecrest Community Hospital or the care provided by the doctor who was employed by the medical group were made other than in a proper manner. The Legislature has recognized the importance of the right of persons to contribute to the ongoing quality assurance program involving the medical professions by enacting Civil Code section 43.8. That section, which extends the privilege afforded by Civil Code section 47 (dealing with privileged communications or broadcasts), provides: "In addition to the privilege afforded by Section 47, there shall be no monetary liability on the part of,

and no cause of action for damages shall arise against, any person on account of the communication of information in the possession of such person to any hospital, hospital medical staff, veterinary hospital staff, professional society, medical, dental, or veterinary school, professional licensing board or division, committee or panel of such licensing board, peer review committee, quality assurance committees established in compliance with Sections 4070 and 5624 of the Welfare and Institutions Code, or underwriting committee described in Section 43.7 when such communication is intended to aid in the evaluation of the qualifications, fitness, character, or insurability of a practitioner of the healing or veterinary arts and does not represent as true any matter not reasonably believed to be true. . . ."

This legislative insulation from civil liability for those persons who communicate with various quality control and review boards touching on the healing arts implicitly recognizes the importance of individual input into such quality assurance programs.

Given this statutory framework, the chilling effects of defendants' action is obvious. If defendants can refuse to treat those persons who communicate with state agencies or other quality assurance programs, defendants will discourage such communication in derogation of the legislative preference in extending a statutory privilege to such communications. Defendants' demurrer to the fourth cause of action should have been sustained with leave to amend.

### Bases of Relief

As previously stated, plaintiffs sought a declaration of their rights with respect to defendants. They also sought an injunction to prohibit defendants from denying them medical care, and they sought damages for the deprivation of such care. We conclude that all three elements of relief have been recognized by the courts, and therefore the trial court's order sustaining the defendants' demurrer without leave to amend cannot be upheld based on the nature of relief requested.

■ First, plaintiffs' prayer for declaratory relief stated facts which demonstrated the existence of an actual controversy needing resolution. This was sufficient under the circumstances of this case. (See *Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288 [131 Cal.Rptr. 547].)

■ The claim for injunctive relief runs into the problem of compelling a physician to provide treatment for a patient. As discussed in the first section of this opinion, there is nothing in plaintiffs' complaint to indicate that the court must be concerned with an individual physician who would

be subject to judicial compulsion to treat a particular plaintiff. Therefore, injunctive relief may be granted.

■ Plaintiffs' claim for monetary damages for deprivation of medical care is specifically authorized under the holding of *Washington* v. *Blampin, supra,* 226 Cal.App.2d 604.

Defendants' demurrer should not have been sustained without leave to amend. The judgment dismissing plaintiffs' complaint is reversed.

Zenovich, Acting P. J., and Martin, J., concurred.