**DIAMOND SHAMROCK REFINING AND MARKETING COMPANY, Petitioner,**

v.

**Roque MENDEZ, Respondent.**

No. D–1090.

Supreme Court of Texas.

Oct. 7, 1992.

Rehearing Overruled Dec. 31, 1992.

Concurring and Dissenting Opinions on Motion for Rehearing Dec. 31, 1992.

W. Wendell Hall, San Antonio, for petitioner.

Jo Chris G. Lopez, San Antonio, Ruben R. Pena, Michael E. Hearn, Weslaco, for respondent.

## OPINION

PHILLIPS, Chief Justice.

In this action, an employee claims that his employer committed the torts of "false light" invasion of privacy and intentional infliction of emotional distress by circulating information about his termination among his fellow employees. The trial court rendered judgment on a jury verdict for the plaintiff on both theories. The court of appeals held that no evidence supported the jury's verdict as to intentional infliction of emotional distress, but it affirmed the judgment of the trial court under the false light theory. 809 S.W.2d 514. We reverse the judgment of the court of appeals and remand for a new trial on Mendez's false light theory.

I

Roque Mendez was a chief operator at the Diamond Shamrock oil refinery in Three Rivers, Texas. The evidence most favorable to sustaining the jury's verdict is that on September 4, 1985, Mendez was ordered by his supervisor to clean up debris that had been left in his work area, including loose nails discarded by carpenters. He became angry at being assigned the clean-up task, which he perceived to be

outside the scope of his ordinary duties. While he was cleaning, Mendez threw some of the nails, the value of which was less than five dollars, into a box and put the box into his lunch bag. He then placed the bag on a shelf while he finished cleaning. When he was finished he went to the clock house, which was on company property, placed the bag on a table, clocked out, and left the refinery.

After Mendez departed, a security officer found his lunch bag and noticed that it contained the nails. The security staff reported the finding to Wayne Billings, Human Resource and Administrative Manager, and John Hoffman, Plant Manager. Billings telephoned Mendez and asked him to return to the refinery. Confronted by Billings and Hoffman, Mendez identified the bag as his own. When asked to explain, Mendez described how he had become angered by his supervisor's order and rudeness and how he simply threw the nails into the box and threw the box into the bag. Hoffman then told Mendez that the bag contained company property and that it appeared that Mendez was stealing. When Hoffman asked whether Mendez agreed, Mendez replied, "I guess so." Hoffman then terminated Mendez and left the room. Left alone with Mendez, Billings asked why Mendez had not simply asked for a "gate pass" to take the nails off the premises. Mendez replied, "I don't know, Wayne. I guess I messed up."

Word of Mendez's termination spread quickly in Three Rivers. Many people with whom Mendez spoke during the next few weeks, including potential employers, knew that he had been terminated for stealing. As a result, he claims to have suffered significant financial and emotional setbacks.

Mendez filed suit against Diamond Shamrock on September 1, 1987, nearly two years after his termination. In his original petition, he alleged defamation, breach of contract, bad faith and unfair dealing, and violation of certain constitutional rights. Later, he added claims for malicious and wrongful termination, intentional or reckless infliction of emotional distress, negli-gence, and invasion of privacy comprising the embarrassing disclosure of personal facts and placing the plaintiff in a false light in the public eye. Mendez did not pursue his defamation claim, presumably because he did not bring it within the applicable one-year limitations period. *See* Tex. Civ.Prac. & Rem.Code § 16.002. The trial court submitted questions to the jury on only two theories of liability: intentional infliction of emotional distress and false light invasion of privacy. With respect to false light, the court submitted the following question to the jury:

Did the Defendant, Diamond Shamrock, by and through its employees, invade the privacy of the Plaintiff, Roque Mendez?

You are instructed that the Defendant may invade the privacy of the Plaintiff if it publicized matters which placed him in a false light before the public that would be highly offensive to a reasonable person.

Diamond Shamrock objected to this question, arguing that it omitted the "actual malice" standard for false light, an essential element of Mendez's cause of action. The trial court overruled this objection. The jury found for Mendez on both the false light and intentional infliction of emotional distress counts, awarding him $460,000 in damages: $260,000 for past and future lost wages, $100,000 for mental anguish, and $100,000 for loss of reputation. The trial court rendered judgment on the jury verdict.

On appeal to the court of appeals, Diamond Shamrock argued that the trial court erred by failing to include the element of actual malice in its instruction to the jury on false light invasion of privacy. The court of appeals affirmed the judgment, holding that negligence, rather than actual malice, should be the standard in false light suits by private individuals. 809 S.W.2d at 520. Further, Diamond Shamrock could not complain of the absence of a negligence instruction, since it had not requested one. Although the court also held that there was no evidence that Diamond Shamrock intentionally inflicted emotional distress on Mendez, it affirmed the judgment of the trial

court because it rested on alternate grounds.

## II

This court has never expressly held that a tort for false light invasion of privacy exists in Texas, although we have recognized that it is one of the four usual categories of private actions for invasion of privacy. *See Industrial Foundation of the South v. Texas Industrial Accident Board,* 540 S.W.2d 668, 682 (Tex.1976). Although amicus curiae[1] urge us to reject the false light tort, we do not reach this issue, as it has not been adequately presented by the parties. Even assuming the availability of this cause of action, however, Mendez would not be entitled to recover on the record before us, as he did not submit all the essential elements of the false light tort.

■ The Restatement (Second) of Torts § 652E defines the false light tort to include an actual malice requirement as follows:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Moreover, the Texas courts of appeals that have recognized this tort have applied the actual malice standard, *see Clarke v. Denton Publishing Co.,* 793 S.W.2d 329, 331 (Tex.App.—Fort Worth 1990, writ denied); *Covington v. Houston Post,* 743 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ), as have most courts in other jurisdictions.

*See, e.g., Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 590 S.W.2d 840 (1979), *cert. denied, Little Rock Newspapers, Inc. v. Dodrill,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980); *Goodrich v. Waterbury Republican–American, Inc.,* 188 Conn. 107, 448 A.2d 1317 (1982); *McCall v. Courier–Journal & Louisville Times Co.,* 623 S.W.2d 882 (Ky.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982); *McCormack v. Oklahoma Publishing Co.,* 613 P.2d 737 (Okla.1980); *Gill v. Curtis Pub. Co.,* 38 Cal.2d 273, 239 P.2d 630 (1952); *Eastwood v. Cascade Broadcasting Co.,* 106 Wash.2d 466, 722 P.2d 1295 (1986). *But see Jones v. Palmer Communications, Inc.,* 440 N.W.2d 884, 898 (Iowa 1989), *Crump v. Beckley Newspapers, Inc.,* 1;3 W.Va. 699, 320 S.E.2d 70, 90 (1984), adopting a negligence standard. Thus, if the tort of false light invasion of privacy exists in Texas, it requires a showing of actual malice as an element of recovery. Because the trial court's instruction omitted an element of Mendez's cause of action, Diamond Shamrock properly preserved error by objecting. Tex.R.Civ.P. 274, 279. *See Moulton v. Alamo Ambulance Serv.,* 414 S.W.2d 444, 449–50 (Tex. 1967). Since Mendez failed to establish an essential element of the false light cause of action under the Restatement and the preponderance of case law, the court of appeals' judgment in favor of Mendez on this claim must be reversed. *McKinley v. Stripling,* 763 S.W.2d 407, 409–410 (Tex.1989).

Because of the conflict between jurisdictions regarding the proper standard of conduct, and because this Court has not yet either recognized or disapproved the tort, we remand this cause of action for a new trial in the interest of justice, giving Mendez an opportunity to prove actual malice and Diamond Shamrock an opportunity to object to the theory of recovery in its entirety. Tex.R.App.P. 180.

The concurring and dissenting opinions assert that we should not remand for a

---

**1.** This amicus brief was submitted jointly by the Reporters Committee for Freedom of the Press, the A.H. Belo Corporation, the National Association of Broadcasters, the Houston Chronicle Publishing Company, Capital Cities–ABC, Inc., KTRK Television, Inc., The Fort Worth *Star-Telegram,* The Associated Press, The San Antonio *Light,* and Freedom T.V. Sub., Inc.

new trial on false light without expressly deciding whether the tort exists in Texas. While we appreciate the difficulties inherent in our disposition, we believe the actions of the parties compel such a result. For its part, Diamond Shamrock did not challenge the existence of the tort in the trial court, the court of appeals, or by a distinct point of error even in this Court. Moreover, neither Diamond Shamrock nor Mendez adequately briefed or argued the issue to us. It would ill serve the State's jurisprudence to decide whether this tort exists on such a sparse record. Neither, of course, is Mendez without fault, since, despite timely objection, he failed to establish actual malice, an essential element of false light if it does exist in Texas. On that basis alone, the concurring and dissenting justices would render judgment against him. As the dissenting opinion points out, however, the elements of false light have not been definitively established. In addition to the minority case law, we note that Restatement § 652E contains the following caveat:

> The Institute takes no position on whether there are any circumstances under which recovery can be obtained under this Section if the actor did not know of or act with reckless disregard as to the falsity of the matter publicized and the false light in which the other would be placed but was negligent in regard to these matters.

Also, the United States Court of Appeals for the Fifth Circuit, in a false light case under Texas law, predicted that this Court would adopt a negligence standard if presented with the issue. *Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1091 (5th Cir.1984). Because of this uncertainty, the least objectionable alternative, among several bad choices, is to remand for a new trial without expressly deciding whether the false light tort exists in Texas.

The concurring and dissenting justices point to our holding in *Westgate v. State*, 843 S.W.2d 448 (1992), where we refused to remand in the interest of justice to allow a plaintiff to pursue a legal theory not recognized under Texas law. In *Westgate*, however, the uncertain legal theory, bad-faith delay by a condemning authority, had never been advanced by the plaintiff at any stage of the case. Thus the defendant had been given no opportunity to object to the existence of the cause of action. Under those circumstances, it would have been unfair to subject the defendant to a second trial. Here, Mendez consistently asserted a claim for false light, yet Diamond Shamrock failed to challenge the existence of the tort in an appropriate manner. This failure by Diamond Shamrock precludes the Court from deciding whether the tort exists; therefore it is not unfair to subject Diamond Shamrock to a second trial on an uncertain theory. The rule of *Westgate* is sound, but it does not control under these unique circumstances.

### III

The court of appeals reversed the trial court's judgment that Diamond Shamrock intentionally inflicted emotional distress on Mendez, finding no evidence of such an infliction. By cross-point, Mendez urges us to reverse this holding.

The Restatement (Second) of Torts § 46 (1965) defines the tort of intentional infliction of emotional distress as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress....

We have never recognized this tort, but a number of Texas courts of appeals have done so, *see, e.g., Tidelands Automobile Club v. Walters*, 699 S.W.2d 939 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.); *Bushell v. Dean*, 781 S.W.2d 652, 657–58 (Tex.App.—Austin 1989), *rev'd on other grounds*, 803 S.W.2d 711 (Tex.1991); *Service Lloyds Ins. Co. v. Greenhalgh*, 771 S.W.2d 688, 692 (Tex.App.—Austin 1989), *rev'd on other grounds*, 787 S.W.2d 938 (Tex.1990), as have courts in many other jurisdictions.[2] We need not decide in this

---

**2.** *See Gallups v. Cotter*, 534 So.2d 585 (Ala.1988); *Teamsters Local 959 v. Wells*, 749 P.2d 349 (Alas-

case whether the tort exists in Texas, because Mendez failed to offer more than a scintilla of evidence of an essential element of the tort as it has been recognized in lower courts of this state and in courts of other jurisdictions, the presence of outrageous conduct.

Mendez argues that Diamond Shamrock's tortious conduct occurred not by terminating him, but by falsely depicting him in the community as a thief. Even if Mendez's charges are taken as true, however, this conduct is not sufficiently outrageous to raise a fact issue.[3] Restatement § 46, comment d, describes conduct reaching the level of "outrageousness" necessary for liability for intentional infliction of emotional distress in these terms:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

There is no evidence that Diamond Shamrock's conduct met this standard. We need not condone or agree with Diamond Shamrock's actions to conclude that, as a matter of law, they fall short of being "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community." While there may obviously be instances where a termination is accompanied by behavior of this sort, there would be little left of the employment-at-will doctrine if an employer's public statement of the reason for termination was, so long as the employee disputed that reason, in and of itself some evidence that a tort of intentional infliction of emotional distress had been committed. The court of appeals did not err in denying Mendez recovery on this ground.

## IV

For the foregoing reasons, we affirm the judgment of the court of appeals against Mendez on the ground of intentional infliction of emotional distress. We reverse the judgment of the court of appeals in favor of Mendez on the ground of false light, and remand that claim to the trial court for a new trial.

HIGHTOWER, J., concurs with opinion.

GONZALEZ, J., concurs and dissents with opinion in which CORNYN, J., joins.

HECHT, J., concurs and dissents with opinion.

DOGGETT, dissents with opinion in which MAUZY and GAMMAGE, JJ., join.

HIGHTOWER, Justice, concurring.

I join the court's opinion and judgment in this cause. However, I write separately to

ka 1988); *Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580 (1987); *Harris v. Arkansas Book Co.,* 287 Ark. 353, 700 S.W.2d 41 (1985); *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988); *Petyan v. Ellis,* 200 Conn. 243, 510 A.2d 1337 (1986); *Eastern Airlines v. King,* 557 So.2d 574 (Fla.1990); *McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806 (1988); *Vinson v. Linn–Mar Community School Dist.,* 360 N.W.2d 108 (Iowa 1984); *Naufeldt v. L.R. Foy Construction Co.,* 236 Kan. 664, 693 P.2d 1194 (1985); *Craft v. Rice,* 671 S.W.2d 247 (Ky.1984); *Staples v. Bangor Hydro–Electric Co.,* 561 A.2d 499 (Me. 1989); *B.N. v. K.K.,* 312 Md. 135, 538 A.2d 1175 (1988); *Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315 (1976); *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 773 P.2d 1231 (1989); *Gall v. Great Western Sugar Co.,* 219 Neb. 354, 363 N.W.2d 373 (1985); *West v. King's Department Store, Inc.,* 321 N.C. 698, 365 S.E.2d 621 (1988); *Williams v. Lee Way Motor Freight, Inc.,* 688 P.2d 1294 (Okla.1984); *Reamsnyder v. Jas-*

*kolski,* 10 Ohio St.3d 150, 462 N.E.2d 392 (1984); *Hall v. May Dept. Stores Co.,* 292 Or. 131, 637 P.2d 126 (1981); *Ford v. Hutson,* 276 S.C. 157, 276 S.E.2d 776 (1981); *Wangen v. Knudson,* 428 N.W.2d 242 (S.D.1988); *Pentecost v. Harward,* 699 P.2d 696 (Utah 1985); *Sheltra v. Smith,* 136 Vt. 472, 392 A.2d 431 (1978); *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145 (1974); *Contreras v. Crown Zellerbach Corp.,* 88 Wash.2d 735, 565 P.2d 1173 (1977); *Cook v. Heck's, Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986); *Mummery v. Polk,* 770 P.2d 241 (Wyo. 1989).

3. Although Mendez alleges in his brief that Diamond Shamrock "told all of his fellow employees he was a thief, and spread this falsity to the community at large," the direct evidence reflects only that Diamond Shamrock, through Billings and Hoffman, informed the plant supervisors and one chief operator, Clayson Royal, about Mendez's termination.

express my continuing support of the right to privacy under the Texas Constitution.

In *Texas State Employee's Union v. Texas Dep't of Mental Health and Mental Retardation*, 746 S.W.2d 203 (Tex.1987), cited by the dissent, this court recognized that the Texas Constitution guarantees the right to privacy and articulated a strict standard of review for governmental intrusion:

> Each of these provisions [sections 6, 8, 9, 10, 19 and 25 of article 1 of the Texas Constitution] gives rise to a concomitant zone of privacy. We do not doubt, therefore, that a right of individual privacy is implicit among those "general, great, and essential principles of liberty and free government" established by the Texas Bill of Rights. We hold that the Texas Constitution protects personal privacy from unreasonable intrusion. This right to privacy should yield only when the government can demonstrate that an intrusion is reasonably warranted for the achievement of a compelling governmental objective that can be achieved by no less intrusive, more reasonable means.

*Id.* at 205 (citations omitted). In an unanimous opinion, this court held "that the Department's polygraph policies impermissibly violate privacy rights protected by the Texas Constitution." *Id.* at 206. I have and will resist any attempts to trivialize or otherwise weaken this fundamental right. It is imperative that the right to privacy under the Texas Constitution remain a vital right for the protection of all Texans.

GONZALEZ, Justice, concurring and dissenting.

I concur with the Court's disposition regarding the tort of intentional infliction of emotional distress. However, I disagree that this case should be remanded for trial on a cause of action that we have not expressly recognized in Texas. As the Court recently stated in *Westgate, Ltd v. State*, 843 S.W.2d 448, 455 (Tex.1992): "We have located no other case where this Court ordered a remand to allow the losing party to pursue a legal theory not recognized under Texas law. Indeed, such a remand would not be in the interest of justice, as it would subject the prevailing party to a second trial on an uncertain legal theory." *Westgate* should be applied today to render, rather than remand, this case.

The plurality opinion leaves the fundamental issue of the existence of the tort of false light invasion of privacy completely unresolved. I would reach this important issue, and expressly reject this tort because it duplicates the tort of defamation and lacks many of the procedural limitations that accompany a cause of action for defamation.

The common law action for invasion of privacy [1] was developed on the basis of an early law review article, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV.L.REV. 193 (1890).[2] Warren and

---

**1.** The dissent bemoans the "assault on the right to privacy;" states that the right to privacy "encompasses a broad range of personal rights, from a married couple's determination to use contraceptives to a woman's decision whether or not to terminate her pregnancy;" and claims that "the right of privacy is intricately woven into the fabric of our constitutional and common law." 844 S.W.2d at 213–214. Such claims grossly mischaracterize the effect of the writings today. The right of privacy recognized under the United States Constitution in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), **is not even implicated** in this case since Diamond Shamrock is purely a private corporation. Federal constitutional guarantees only apply against "state actors"—such guarantees do not apply against private individuals unless the individuals are performing a governmental function or the state encourages or coerces the actions of the individuals. *See Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Mendez has not alleged that Diamond Shamrock is a state actor, nor could he under the facts of this case.

The application of the state action doctrine to the Texas Constitution has not been conclusively established by this Court. However, even assuming for the sake of argument that the Texas constitutional right of privacy does not require state action, Mendez never alleged that his constitutional privacy rights were violated. Therefore, this case has absolutely nothing to do with constitutional privacy rights—the only claim before us is a common-law privacy claim.

**2.** But see James H. Barron, *Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193, (1890): Demystifying a Landmark Citation,* 13 SUFFOLK U.L.REV. 875, 892–93 (1979) (questioning

Brandeis stated that their purpose in writing the article was "to consider whether the existing law affords a principle which can properly be invoked to protect the privacy of the individual; and, if it does, what the nature and extent of such protection is." *Id.* at 197. Dean Prosser described their methodology as follows:

> Piecing together old decisions in which relief had been afforded on the basis of defamation, or the invasion of some property right, or a breach of confidence or an implied contract, the article concluded that such cases were in reality based upon a broader principle which was entitled to separate recognition. This principle they called the right to privacy....

William L. Prosser, *Privacy*, 48 CAL.L.REV. 383, 384 (1960).

The "right to privacy" slowly gained acceptance among courts in the states. *See Id.* at 385–88. By 1941, Dean Prosser had identified three separate injuries that had been recognized under the "right of privacy:" "intrusion upon the plaintiff's ... right to be let alone in his own affairs," "publicity ... given to private information about the plaintiff," and the most widely recognized injury, "appropriation of some element of the plaintiff's personality for a commercial use." WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 1054–56 (1st ed. 1941). By 1955, however, he had amended his treatise to include a fourth privacy tort, false light, which "ha[d] made a rather amorphous appearance in several cases," and consists of publicity that places "the plaintiff in a false but not necessarily defamatory position in the public eye...." WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 638 (2d ed. 1955). Dean Prosser professed reservations about this action, noting in an influential law review article that Warren and Brandeis apparently did not intend a false light tort as part of invasion of privacy. William L. Prosser, *Privacy*, 48 CAL.L.REV. 383, 389 (1960). Others believe, his protestations to the contrary, Dean Prosser was not merely the messenger, but indeed, the progenitor, of the doctrine. One commentator writes:

> [Prosser's] efforts at creative taxonomy, applied to the rather amorphous body of judicial opinion on privacy, in a real sense "invented" the false light tort by singling out previously unacknowledged features common to most of the nonadvertising appropriation cases ... This result is ironic, since Prosser himself was skeptical about the desirability of the false light privacy action.

Diane Leenheer Zimmerman, *False Light Invasion of Privacy: The Light that Failed*, 64 N.Y.U.L.REV. 364, 382 (1989). *See also* Harry Kalven, Jr., *Privacy in Tort Law—Were Warren and Brandeis Wrong?*, 31 LAW & CONTEMP. PROBS. 326, 332 n. 41 (1966). Nevertheless, the tort was soon adopted and enshrined in the Restatement (Second) of Torts § 652A (1965).

However, Texas did not recognize any of the four types of invasion of privacy until our decision in *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973).[3] In *Billings*, the defendant, a telephone company employee, had placed a wire tap on the plaintiff's residential telephone line and had apparently listened to plaintiff's personal telephone conversations. In affording the plaintiff

---

the tale of whether the article was a response to a series of uncomplimentary Boston newspaper articles describing the wedding of Warren's daughter).

**3.** In *Milner v. Red River Valley Publishing Co.*, 249 S.W.2d 227 (Tex.Civ.App.—Dallas 1952, no writ), a Sherman newspaper published an article revealing that a man who had recently been killed in a traffic accident had been indicted the previous year for grand theft. His survivors brought an action against the newspaper, alleging that, although truthful, the article invaded their privacy and caused their "embarrassment, humiliation and mortification." *Id.* at 228. The court held that the right to privacy had not been recognized by the common law of Texas or the legislature, and that the libel statute [TEX.REV.CIV.STAT. art. 5430 (recodified at TEX.CIV. PRAC. & REM.CODE § 73.001)] already granted a cause of action for "the publication of written or printed statements which blacken 'the memory of the dead.'" *Id.* at 229. Thus, recovery was denied. *See also Hansson v. Harris*, 252 S.W.2d 600 (Tex.Civ.App.—Austin 1952, writ ref'd n.r.e.); *O'Brien v. Pabst Sales Co.*, 124 F.2d 167, 170 (5th Cir.1941), *cert. denied*, 315 U.S. 823, 62 S.Ct. 917, 86 L.Ed. 1220 (1942) (noting that no Texas cases had yet recognized the right of privacy).

relief, we noted that the majority of jurisdictions in the United States recognized an independent cause of action for the invasion of privacy, and held that "the right of privacy constitutes a legal injury for which a remedy will be granted." *Id.* at 860. We explained that:

the increased complexity and intensity of modern civilization and the development of man's spiritual sensibilities have rendered man more sensitive to publicity and have increased his need of privacy, while the great technological improvements in the means of communication have more and more subjected the intimacies of his private life to exploitation by those who pander to commercialism and to prurient and idle curiosity. A legally enforceable right of privacy is deemed to be a proper protection against this type of encroachment upon the personality of the individual.

*Id.* (*quoting* 62 AM.JUR.2d *Privacy* § 4 (1962)).

*Billings* falls into the first category of invasion of privacy as developed by Prosser and recognized by the Restatement: an intrusion into the plaintiff's seclusion. We have also expressly recognized the third type of privacy right, the right to "freedom from public disclosure of embarrassing private facts." *Industrial Foundation of the South v. Texas Industrial Accident Board,* 540 S.W.2d 668, 682 (Tex.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977).[4] Although we acknowledged the Prosser categorization in *Indus-*

*trial Foundation,* we have never embraced nor recognized the fourth and final type of invasion of privacy, the "false light" tort. 844 S.W.2d at 200. We should decline to do so today.

The Restatement (Second) of Torts § 652E (1977) defines false light invasion of privacy as follows:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if:

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Despite its questionable origins, the false light tort has been recognized by at least eleven jurisdictions.[5] Twice it has been approved by the United States Supreme Court: *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), and *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974). In *Hill,* the Court considered a New York privacy statute and imposed an "actual malice" standard on the false light action, and in *Cantrell,* the Court reaffirmed this standard for a common law false light action brought under Ohio law.

---

**4.** The second type of privacy right, protecting against appropriation of a name or likeness, is well established in the jurisprudence of many states. *See* James M. Treece, *Commercial Exploitation of Names, Likenesses, and Personal Histories,* 51 TEX.L.REV. 637 (1973); *Pavesich v. New England Life Insurance Co.,* 122 Ga. 190, 50 S.E. 68, 75–81 (1905) (discussing Michigan and New York cases and predicting future widespread acceptance of this tort). The only Texas case recognizing this tort is *Kimbrough v. Coca–Cola/USA,* 521 S.W.2d 719, 721–22 (Tex.Civ. App.—Eastland 1975, writ ref'd n.r.e.). *See also Benavidez v. Anheuser Busch, Inc.,* 873 F.2d 102, 104 (5th Cir.1989) (applying Texas law).

**5.** *See Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 590 S.W.2d 840, 845 (1979), *cert. denied sub nom. Little Rock Newspapers, Inc. v. Dodrill,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980);

*Goodrich v. Waterbury Republican–American, Inc.,* 188 Conn. 107, 448 A.2d 1317, 1329–30 (1982); *Harrison v. Washington Post Co.,* 391 A.2d 781, 784 (D.C.1978); *Winegard v. Larsen,* 260 N.W.2d 816, 822 (Iowa 1977); *Froelich v. Adair,* 213 Kan. 357, 516 P.2d 993 (1973); *McCall v. Courier–Journal & Louisville Times Co.,* 623 S.W.2d 882, 887–88 (Ky.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982); *McCormack v. Oklahoma Publishing Co.,* 613 P.2d 737, 740 (Okla.1980); *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70, 83 (1984); *Gill v. Curtis Pub. Co.,* 38 Cal.2d 273, 239 P.2d 630 (1952); *Eastwood v. Cascade Broadcasting Co.,* 106 Wash.2d 466, 722 P.2d 1295, 1296 (1986); *Todd v. South Carolina Farm Bureau Mut. Ins. Co.,* 276 S.C. 284, 278 S.E.2d 607 (1981).

The false light invasion of privacy action has also been recognized by several other Texas courts of appeals. *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6 (Tex.App.—Corpus Christi 1991, no writ); *Clarke v. Denton Publishing Co.*, 793 S.W.2d 329, 331 (Tex.App.—Fort Worth 1990, writ denied); *Covington v. Houston Post*, 743 S.W.2d 345, 347 (Tex.App.—Houston [14th Dist.] 1987, no writ); *National Bonding Agency v. Demeson*, 648 S.W.2d 748, 750 (Tex.App.—Dallas 1983, no writ); *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ). In all of these cases, either no application for writ of error was filed in this Court or the court rejected the application with the notation "writ denied," so that our approval was never given to any of these holdings. Also, several federal courts interpreting Texas law have permitted a cause of action for false light. *See Moore v. Big Picture Co.*, 828 F.2d 270, 273 (5th Cir.1987); *Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1091 (5th Cir. 1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Braun v. Flynt*, 726 F.2d 245, 252 (5th Cir.), *cert. denied*, 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984).

Nevertheless, false light remains the least-recognized and most controversial aspect of invasion of privacy. *See* BRUCE W. SANFORD, LIBEL AND PRIVACY § 11.4.1 at 567 (2d ed. 1991) ("Of Dean Prosser's four types of privacy torts, the 'false light' school has generated the most criticism because of its elusive, amorphous nature"); Diane Leenheer Zimmerman, *supra*, at 452 ("the wiser course may be for states to eliminate false light altogether").

A number of other jurisdictions have declined to adopt the false light tort. *See Renwick v. News & Observer Publishing Co.*, 310 N.C. 312, 312 S.E.2d 405, 412, *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984); *Sullivan v. Pulitzer Broadcasting Co.*, 709 S.W.2d 475, 479–80 (Mo.1986); *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 449 N.Y.S.2d 941, 945, 434 N.E.2d 1319, 1323 (1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983); *Yeager v. Local Union 20, Int'l Brotherhood of Teamsters*, 6 Ohio St.3d 369, 453 N.E.2d 666, 669–70 (1983); *see also ˚Falwell v. Penthouse Int'l, Ltd.*, 521 F.Supp. 1204, 1206 (W.D.Va.1981) ("[t]he courts of Virginia simply do not recognize such a common law cause of action"). Today, we should join these jurisdictions in declining to recognize the false light invasion of privacy action.

I recognize that Diamond Shamrock did not challenge the validity of the false light invasion of privacy action until the filing of its application for writ of error in this Court.[6] Thus, it did not preserve error as to this point under Texas Rule of Appellate Procedure 52(a). However, this Court has traditionally been willing to address issues fundamental to our jurisdiction, such as the recognition of common law causes of action or defenses, whether assigned as error or not. *See, e.g., McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971) (abolishing the "unity of release" rule); *Farley v. MM Cattle Co.*, 529 S.W.2d 751 (Tex.1975) (abolishing the "assumption of risk" doctrine); *Bounds v. Caudle*, 560 S.W.2d 925 (Tex. 1977) (abolishing the doctrine of interspousal immunity for intentional torts). We cannot premise the recognition of a cause of action or defense in our common law on the vagaries of one litigant's full compliance in one case with our appellate preservation rules.

We should reject the false light invasion of privacy tort for two reasons: first, because it largely duplicates other rights of recovery, particularly defamation; and second, because it lacks many of the procedural limitations that accompany actions for defamation, thus unacceptably increasing the tension that already exists between free speech constitutional guarantees and tort law.

---

**6.** A challenge to the validity of the false light action was also raised in this Court by a group of amicus curiae comprising the Reporters Committee for Freedom of the Press, A.H. Belo Corp., National Association of Broadcasters, Houston Chronicle Publishing Co., Capital Cities–ABC, Inc., KTRK Television, Inc., the *Fort Worth Star-Telegram*, Associated Press, the *San Antonio Light*, and Freedom T.V. Sub, Inc. d/b/a/ KFDM–TV.

## Duplication of Other Causes of Action

The false light action, as it has been defined by the Restatement, permits recovery for injuries caused by publicity that unreasonably places the plaintiff in a false light before the public. Restatement (Second) of Torts § 652A (1977). Although not explicitly required by the Restatement definition, most jurisdictions, including the lower Texas courts that have recognized the action, require that a statement be false if it is to be cognizable under the false light doctrine. *See Clarke v. Denton Publishing Co.*, 793 S.W.2d 329, 331 (Tex.App.—Fort Worth 1990, writ denied) (false light action "concerns untrue statements about a party"); *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ) ("evidence will not support a cause of action for false light because we believe no false statements of fact were ever publicized"); *Machleder v. Diaz*, 801 F.2d 46 (2d Cir. 1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987) (in New Jersey, truth is an absolute defense to the false light action); ROBERT D. SACK, LIBEL, SLANDER, AND RELATED PROBLEMS 394 (1980) ("[t]he statement ... must be false"). The falsity requirement is sensible, considering that the "revelation of private facts" invasion of privacy tort purports to grant relief for the disclosure of true statements that adversely affect the subject. *But see* Thomas I. Emerson, *The Right of Privacy and Freedom of the Press*, 14 HARV. C.R.-C.L. L.REV. 329, 345 (1979) (the truth or falsity of statements giving rise to liability for false light should not matter; rather, false light cases should be treated the same as embarrassing disclosure cases).

If we were to recognize a false light tort in Texas, it would largely duplicate several existing causes of action, particularly defamation. Libel, which is written defamation, is defined by Texas Civil Practice & Remedies Code § 73.001 as follows:

A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

Slander, the spoken form of defamation, is not codified by statute, but has been recognized at common law to be "a defamatory statement orally published to a third party without justification or excuse." *See* Restatement (Second) of Torts § 568 (1977); *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 921 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.). Thus, like false light, defamatory statements must be false in order to be actionable. *See* Restatement (Second) of Torts § 558 (1977); *see generally* BRUCE W. SANFORD, LIBEL AND PRIVACY 201–39 (2d ed. 1991).

Furthermore, the elements of damages that have been recognized in false light actions are similar to those awarded for defamation. The principal element of actual damages for false light claims is typically mental anguish, *see* Restatement (Second) of Torts § 652H (1977); *Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084 (5th Cir.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Braun v. Flynt*, 726 F.2d 245, 255–56 (5th Cir.), *cert. denied*, 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984), but physical illness and harm to the plaintiff's commercial interests have also been recognized. *See* William L. Prosser, *Privacy*, 48 CAL.L.REV. 383, 409 (1960); Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Defenses and Remedies*, 57 A.L.R. 4th 244, 311–12 (1987). These are essentially the types of damages sought in defamation actions. *See* Restatement (Second) of Torts §§ 620–23 (1977); BRUCE W. SANFORD, *supra*, at 431–54; *Shearson Lehman Hutton*, 806 S.W.2d at 922. Thus many, if not all, of the injuries redressed by the false light tort are also redressed by defamation. *See Kapellas v. Kofman*, 1 Cal.3d 20, 35 n. 16, 81 Cal.Rptr. 360, 369 n. 16, 459 P.2d 912, 921 n. 16 (1969) ("[s]ince the complaint contains a specific cause of action for libel, the privacy count, if intended [as a false light count] is superfluous and should be dismissed.").

The false light tort also overlaps with some of the other, better recognized, privacy torts. *See, e.g.*, Harry Kalven, Jr., *Privacy in Tort Law—Were Warren and Brandeis Wrong?*, 31 LAW & CONTEMP. PROBS. 326, 332 (1966) (noting the potential overlap of false light and appropriation); *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 135 (2d Cir.1984) ("while not specifically alleged in her complaint, [plaintiff's right to publicity] action presents a classic false light claim"). Finally, as we observed in *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex.1973), "some of the right of privacy interests have been afforded protection under such traditional theories as libel and slander, wrongful search and seizure, eavesdropping and wiretapping, and other similar invasions into the private business and personal affairs of an individual."

A few commentators have attempted to delineate the theoretical differences between false light invasion of privacy and other torts, particularly defamation. As one notes:

> [I]n defamation cases the interest sought to be protected is the objective one of reputation, either economic, political, or personal, in the outside world. In privacy cases the interest affected is the subjective one of injury to the inner person ... in defamation cases, where the issue is truth or falsity, the marketplace of ideas furnishes a forum in which the battle can be fought. In privacy cases, resort to the marketplace simply accentuates the injury.

Thomas I. Emerson, *The Right of Privacy and Freedom of the Press*, 14 HARV. C.R.–C.L. L. REV. 329, 333 (1979). *See also* WILLIAM L. PROSSER, PROSSER AND KEETON ON THE LAW OF TORTS 864 (W. Page Keeton ed., 5th ed. 1984). But a number of other scholars have argued that false light and defamation are nearly identical or even indistinguishable. *See, e.g.*, BRUCE W. SANFORD, *supra*, § 11.4.1 at 567 (2d ed. 1991) ("Legally, placing someone in a false light amounts to little more than defamation"); ROBERT D. SACK, LIBEL, SLANDER, AND RELATED PROBLEMS 394 (1980) (where the circumstances would support an action for "false light" invasion of privacy, plaintiffs may often successfully use libel or slander in addition or instead); John W. Wade, *Defamation and the Right of Privacy*, 15 VAND.L.REV. 1093, 1121 (1962) ("the great majority of defamation actions can now be brought for invasion of privacy ... the action for invasion of privacy may come to supplant the action for defamation"); William L. Prosser, *Privacy*, 48 CAL.L.REV. 383, 400 (1960) ("[t]here has been a good deal of overlapping of defamation in the false light cases, and apparently either action, or both, will very often lie").

In practice, the theoretical distinctions between false light and defamation have proven largely illusory. Of the six false light cases considered by Texas courts of appeals, all were brought, or could have been brought, under another legal theory. In *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex. App.—Fort Worth 1982, no writ), the defendant took out a newspaper advertisement reproducing a letter that plaintiff had received from the Texas Water Development Board. The letter and accompanying comments by defendant implied that plaintiff was involved in political graft. *Id.* at 223. The court of appeals granted no relief on the plaintiff's false light claim, however, because the disputed publication was not false. Likewise, the court granted no relief under intrusion or public disclosure theories of invasion of privacy. *Id.* at 224. Because the publication was not false, a libel action would not have been successful either. The false light action thus afforded the plaintiff no relief beyond what was available under libel and other invasion of privacy theories.

In *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1 (Tex.App.—Corpus Christi 1991, no writ), the plaintiff was discharged from his job at a grocery store. He brought suit against the store alleging civil conspiracy, invasion of privacy, wrongful discharge, breach of express and/or implied contract, and defamation. *Id.* at 3. The trial court granted summary judgment against the plaintiff on all claims except defamation, which went to a jury trial. The jury found that the statements supporting his defamation claim

were true, and thus not defamatory. Thus, a false light claim would not have been supportable either.

In *National Bonding Agency v. Demeson*, 648 S.W.2d 748 (Tex.App.—Dallas 1983, no writ), the defendant bonding agency displayed a "wanted" poster depicting the plaintiff, describing her as a "bond jumper," and referring to her sexual habits. *Id.* at 749. The plaintiff alleged damages in connection with the poster under theories of libel, slander, invasion of privacy (by intrusion, public disclosure of private facts, and false light) and intentional infliction of emotional distress. The jury awarded actual damages for invasion of privacy and exemplary damages for "invasion of privacy or libel." *Id.* at 750–51. Her injury was clearly addressed by numerous causes of action.

Both *Covington v. Houston Post*, 743 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1987, no writ), and *Clarke v. Denton Publishing Co.*, 793 S.W.2d 329, 330 (Tex. App.—Fort Worth 1990, writ denied), involved newspaper stories that incorrectly attributed criminal conduct to the plaintiffs, conduct generally cognizable under libel. When their libel claims were barred by limitations, the plaintiffs were able to prevail on their false light claims.

Finally, Mendez, the plaintiff in the instant case, alleged that he was placed in a false light when his employer spread allegedly false information about his termination among its employees. This claim clearly sounds in defamation, *see Marathon Oil Co. v. Salazar*, 682 S.W.2d 624 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.),[7] which, in fact, Mendez originally pleaded.

In essence, Mendez asks this Court to afford him relief under a false light theory simply because he was prevented by limitations from prevailing on a defamation theory.[8] In response, we should adopt this reasoning of the North Carolina Supreme Court in *Renwick*:

> [T]he recognition of claims for relief for false light invasions of privacy would reduce judicial efficiency by requiring our courts to consider two claims for the same relief which, if not identical, would not differ significantly.

*Renwick v. News & Observer Publishing Co.*, 310 N.C. 312, 312 S.E.2d 405, 413, *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984). I see no reason to recognize a cause of action for false light invasion of privacy when recovery for that tort is substantially duplicated by torts already established in this state.

### Freedom of Speech Considerations

As discussed above, the false light tort bears remarkable similarities to defamation. However, the torts are not wholly identical for two reasons: (1) defamation actions are subject to a number of procedural requirements to which invasion of privacy actions are not subject, and (2) certain publications not actionable under a defamation theory might be actionable under false light. Far from persuading me that these distinctions justify a separate tort, I believe they demonstrate that adopting a false light tort in this state would unacceptably derogate constitutional free speech rights under both the Texas and the United States Constitution.

### *1. Procedural Differences*

Actions for defamation in Texas are subject to numerous procedural and substan-

---

7. *Marathon* presents a factual situation remarkably similar to that of the instant case, yet premised on a defamation claim:

   Salazar, a seven-year employee of [Marathon] sued Marathon and ... four ... Marathon "officers, employees or managing agents," after he was charged with, arrested, and fired for the theft of a tool ... owned by a Marathon subcontractor and found in [Salazar's] garage. Later investigation revealed that an employee of the sub-contractor had consented to loan the tool to Salazar.

*Id.* at 626–27. Thus, Salazar appears to have stated a claim similar to Mendez's, but based on defamation. It is probable that he lost nothing by the absence of a false light claim.

8. The statute of limitations for defamation actions is one year. TEX.CIV.PRAC. & REM.CODE § 16.-002. The limitations period for privacy actions has not been expressly delineated by this Court, but the two-year limitations period of § 16.003 probably would apply. *See, e.g., Wood v. Hustler Magazine*, 736 F.2d at 1088.

tive hurdles. For example, accounts of governmental proceedings, public meetings dealing with a public purpose, or any "reasonable and fair comment on or criticism of an official act" are privileged under Texas Civil Practice & Remedies Code § 73.002. Broadcasters are generally not liable in defamation for broadcasts made by third parties. TEX.CIV.PRAC. & REM.CODE § 73.-004. Qualified privileges against defamation exist at common law when a communication is made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication. Restatement (Second) of Torts §§ 594–97 (1977); *see also Holloway v. Texas Medical Ass'n,* 757 S.W.2d 810, 813 (Tex.App.—Houston [1st Dist.] 1988, writ denied). A communication may also be conditionally privileged if it affects an important public interest. Restatement (Second) of Torts § 598 (1977); *see generally* BRUCE W. SANFORD, *supra,* at 701–94.1 (collecting libel privilege statutes from all fifty states). Damages awarded for defamatory statements may be mitigated by factors such as public apology, correction, or retraction. TEX.CIV.PRAC. & REM.CODE § 73.-003; *see generally* BRUCE W. SANFORD, *supra,* at 701–94.1 (collecting libel retraction statutes from thirty-three states). Constitutional county courts in Texas are without jurisdiction to hear defamation cases. TEX. GOV'T CODE § 26.043(1). Finally, Texas Rule of Civil Procedure 137 provides that in defamation actions, if the verdict for the plaintiff is less than twenty dollars, the plaintiff will not recover costs, but each party will be taxed with the costs incurred in the suit. *See also* Restatement (Second) of Torts § 652E, comment e (1977) (listing other possible limitations on the defamation action, including bond posting requirements and proof of special damages).

These technical restrictions serve to safeguard the freedom of speech.[9] Every defamation action that the law permits necessarily inhibits free speech. As the Supreme Court stated with respect to political speech in *New York Times v. Sullivan,* 376 U.S. 254, 272, 84 S.Ct. 710, 721, 11 L.Ed.2d 686, 702 (1964), "[w]hatever is added to the field of libel is taken from the field of free debate." While less compelling, these same considerations are also at play in private, non-political expression. Thus, the defamation action has been narrowly tailored to limit free speech as little as possible.

Courts in many jurisdictions have preserved their protection of speech by holding false light actions to the same strictures as defamation actions. As the Restatement (Second) of Torts § 652E, comment e reasons:

> [w]hen the false publicity is also defamatory ... it is arguable that limitations of long standing that have been found desirable for the action for defamation should not be successfully evaded by a proceeding upon a different theory of later origin, in the development of which the attention of the courts has not been directed to the limitations.

---

**9.** One commentator notes,

> control of words in order to protect reputation has an impact on freedom to speak ... recognition [of this fact] came in the evolution of privileges to protect defamatory communications ... Even though reputation may be injured, sometimes very seriously, by defamation that is privileged, courts concluded that on balance the damage visited upon the ability to speak and write and the consequent danger of loss to society of such communication was too great to permit the person defamed to recover.

Robert D. Sack, *supra,* at 1–2. *See also* Harry Kalven, Jr., *Privacy in Tort Law—Were Warren and Brandeis Wrong?,* 31 LAW & CONTEMP. PROBS. 326, 341 (1966) ("[t]he technical complexity of the law of defamation, which has shown remarkable stamina in the teeth of centuries of acid criticism, may reflect one useful strategy for a legal system forced against its ultimate better judgment to deal with dignitary harms.").

Moreover, defamation is not the only tort that has been limited to protect the freedom of speech. *See* Diane Leenheer Zimmerman, *supra,* at 430 (assault and intentional infliction of emotional distress have also been limited in response to free speech concerns.). *But see* Steven Shiffrin, *Defamatory Non-Media Speech and First Amendment Methodology,* 25 UCLA L. REV. 915, 938–41 (1978) (claiming that modern restrictions on defamation are due in large part to "now forgotten doctrines of judicial jurisdiction and ... seventeenth century necessities of judicial administration").

Several courts have followed this reasoning, particularly regarding the applicable limitations period. *See Sullivan v. Pulitzer Broadcasting Co.,* 709 S.W.2d 475, 480 (Mo.1986) (limitations); *Kapellas v. Kofman,* 1 Cal.3d 20, 81 Cal.Rptr. 360, 370, 459 P.2d 912, 922 (1969) (privilege for truthful publications); *Gashgai v. Leibowitz,* 703 F.2d 10, 13 (1st Cir.1983) (limitations). *See also* Diane Leenheer Zimmerman, *supra,* at nn. 16 & 21 (1989); Debra Ann Bacharach, Comment, *The Privacy Action in Texas: Its Characterization, and a Determination of Applicable Statutes of Limitations,* 29 Sw.L.J. 928, 950 (1975); Russell G. Donaldson, Annotation, *False Light Invasion of Privcay—Defenses and Remedies,* 57 A.L.R. 4th 244, 266–68 (1987). *But see Covington v. Houston Post,* 743 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1987, no writ) (declining to apply defamation statute of limitations to false light claim); *Clarke v. Denton Publishing Co.,* 793 S.W.2d 329, 330 (Tex.App.—Fort Worth 1990, writ denied). Permitting plaintiffs to bring actions for false light without the limits established for defamation actions may inhibit free speech beyond the permissible range.[10] This is especially true in Texas since this Court recently held in *Davenport v. Garcia,* 834 S.W.2d 4, 10 (Tex.1992), that article I, section 8 of the Texas Constitution affords greater protection to free speech than the First Amendment.[11] On the other hand, no useful purpose would be served by the separate tort if these restrictions are imposed. As the court observed in *Renwick v. News & Observer Publishing Co.,* 310 N.C. 312, 312 S.E.2d 405, *cert. denied,* 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984):

> Given the First Amendment limitations placed upon defamation actions by *[New York Times v.] Sullivan* and upon false light invasion of privacy actions by *[Time, Inc. v.] Hill,* we think that such additional remedies as we *might* be required to make available to plaintiffs should we recognize false light invasion of privacy claims are not sufficient to justify the recognition in this jurisdiction of such inherently constitutionally suspect claims for relief.

*Id.* at 413. *See also Lerman v. Flynt Distributing Co.,* 745 F.2d 123, 135 (2d Cir.1984) ("regardless of whether [plaintiff's] cause of action is cast in terms of libel or false light ... the same constitutional protections apply"); *Berry v. NBC, Inc.,* 480 F.2d 428, 431 (8th Cir.1973) ("[t]he problem is whether the plaintiff can, by suing for invasion of privacy, by-pass the various safeguards and limitations which have grown up around the accusation of defamation"). Thus, we should decline to restrict speech in any manner beyond our existing tort law.

---

**10.** This is despite the Supreme Court's seeming approval of the false light tort in *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), and *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974). *See* Diane Leenheer Zimmerman, *supra,* at 436 ("[t]he sheer breadth of the privacy tort exposes a much wider range of errors to liability than does defamation. The inevitable result is a sharp increase in the potential chilling effect of false light.") *See also* Thomas I. Emerson, *supra,* at 333 (false light "raise[s] serious first amendment problems" in the context of freedom of the press); J. Skelly Wright, *Defamation, Privacy, and the Public's Right to Know: A National Problem and a New Approach,* 46 Tex.L.Rev. 630, 635 (1968); William L. Prosser, *Privacy,* 48 Cal.L.Rev. 383, 401 (1960) (if false light ultimately swallows up the law of defamation, it may be asked "what of the numerous restrictions and limitations which have hedged defamation about for many years, in the interest of freedom of the press and the discouragement of trivial and extortionate claims? Are they of so little consequence that they may be circumvented in so casual and cavalier a fashion?").

**11.** In *Davenport,* this Court invalidated a trial court's gag order by adopting a stringent test for scrutinizing prior restraints under article I, section 8 of the Texas Constitution. 834 S.W.2d at 10. The Court held that a gag order would "withstand constitutional scrutiny only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm." *Id.* We stated that although we could benefit from the insights of well-reasoned and developed federal jurisprudence, we were not compelled to reach identical results. *Id.* at 10. Thus, although this issue is not presently before the Court, it is quite possible that *Davenport* might have ramifications on defamation law in this state.

### 2. Non–Defamatory Speech

In theory, the false light action may provide a remedy for certain non-defamatory speech against which there may be no other remedy in tort law. *See* Restatement (Second) of Torts § 652E, comment b (1977). This rationale, however, is not sufficient to persuade me to recognize the false light tort.

It is questionable whether a remedy for non-defamatory speech should exist at all.[12] In *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), the Supreme Court plurality viewed with disfavor the restriction of nondefamatory statements by the New York privacy statute:

> We create a grave risk of serious impairment of the indispensable service of a free press in a free society if we saddle the press with the impossible burden of verifying to a certainty the facts associated in news articles with a person's name, picture or portrait, particularly as related to nondefamatory matter.

385 U.S. at 389, 87 S.Ct. at 542–43, 17 L.Ed.2d at 467 (emphasis added).[13]

On balance, the marginal benefit to be achieved by permitting recovery against non-defamatory speech not addressed by any existing tort would be outweighed by the probable chilling effect on speech and, in some cases, on freedom of the press, that would result from recognition of the false light tort.

For the reasons expressed in this opinion, we should reverse and render this cause

and expressly decline to recognize the tort of false light.

CORNYN, J., joins this opinion.

HECHT, Justice, concurring and dissenting.

This Court has never decided whether a tort of false light invasion of privacy or of intentional infliction of emotional distress does or does not exist in Texas. We should not do so in this case, in which record and argument inadequately address the issues. The existence of both torts was simply assumed in the lower courts and was neither challenged nor defended until the parties arrived here. A new cause of action should neither be born of such simple acquiescence nor disowned by such belated protest. The strong arguments ·for and against both torts, produced by the several legal commentators and authorities in other jurisdictions cited in the opinions of JUSTICE GONZALEZ and JUSTICE DOGGETT, are best resolved when, but not until, they are fully and fairly presented in a case before us.

A sensible reluctance to decide important issues not properly presented in this case makes an adjudication of the rights of the parties difficult. I believe CHIEF JUSTICE PHILLIPS' opinion takes the best approach by assuming that if the torts of false light invasion of privacy and intentional infliction of emotional distress were recognized in Texas, the elements of each would be those established by the weight of authori-

---

**12.** Robert Sack explains why communications not rising to the level of defamation should not be tortious:

> There is common agreement that a communication that is merely unflattering, annoying, irking, or embarrassing, or that hurts the plaintiff's feelings, without more, is not actionable ... People are expected to be sufficiently hardy to withstand the occasional jibe or disparaging remark; if each statement gave rise to a cause of action, courts would have time for nothing but defamation suits.

Robert D. Sack, *supra*, at 45–46. *See also* Kalven, *supra*, at 340 ("If the statement is not offensive enough to the reasonable man to be defamatory, how does it become offensive enough to the reasonable man to be an invasion of privacy?");

Diane Leenheer Zimmerman, *supra*, at 430–34; *Kapellas v. Kofman*, 1 Cal.3d 20, 81 Cal.Rptr. 360, 370, 459 P.2d 912, 922 (1969) (declining to extend the invasion of privacy tort to truthful, newsworthy publications).

**13.** The Supreme Court again cast doubt on recovery for non-defamatory false speech in *Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). The case centered on a parodic and offensive depiction of Rev. Falwell that appeared in *Hustler Magazine.* A jury awarded Falwell $100,000 in actual damages for the intentional infliction of emotional distress, plus an additional $100,000 in punitive damages. The Supreme Court reversed, holding that this application of the tort constituted an illegitimate effort to restrict the magazine's free speech rights. *Id.* at 50–51, 108 S.Ct. at 879–80.

ty in jurisdictions which already recognize the torts. Thus, recovery for false light invasion of privacy would require a showing that defendant acted with actual malice in these circumstances (i.e., when there is a qualified privilege), and recovery for intentional infliction of emotional distress would require a showing that defendant's conduct was outrageous. Because Mendez produced no evidence of outrageous conduct, and requested no finding of actual malice, I agree that the trial court's judgment in his favor cannot stand. I agree with CHIEF JUSTICE PHILLIPS' opinion that judgment must be rendered against Mendez on his emotional distress claim.

I disagree, however, that Mendez' false light claim should be remanded for new trial. It is one thing to decide what the elements of a cause of action should be if it is to be allowed; it is quite another to remand the parties for a trial on such a hypothetical cause of action. The Court leaves the parties to try their case over again without any assurance that the tort asserted even exists. While Mendez was free to assert a cause of action this Court had not recognized when he filed suit, he was obliged to prove the elements required by the weight of authority which did recognize the action. Granted, not every authority requires a showing of actual malice for recovery on a false light tort, but every Texas appellate court which has considered the issue does. *See Covington v. Houston Post*, 743 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ); *but see Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1092 (5th Cir.1984). Mendez could have asked the trial court to submit a question on actual malice to the jury separately, so as not to preclude judgment in his favor if the element were not found but also not required. He chose not to do so. I would not remand for a new trial under these circumstances. It is not necessary, and it is not in the interest of justice.

Only this year, in an effort to set standards for remands in the interest of justice, the Court stated, in an opinion also by CHIEF JUSTICE PHILLIPS:

> We have located no other case where this Court ordered a remand to allow the losing party to pursue a legal theory not recognized under Texas law. Indeed, such a remand would not be in the interest of justice, as it would subject the prevailing party to a second trial on an uncertain legal theory.

*Westgate, Ltd. v. State*, 843 S.W.2d 448 (Tex.1992). By this standard, the remand in this case is not in the interest of justice. Although the circumstances in *Westgate* were different, the standard it enunciated was intended to govern other cases, like this one. The Court's unwillingness to adhere to its own writing as long as a few months is also not in the interest of justice. I would render judgment for Diamond Shamrock. I therefore dissent.

DOGGET, Justice, dissenting.

"[A] right of individual privacy is implicit among those 'general, great, and essential principles of liberty and free government' established by the Texas Bill of Rights."

*Texas State Employee's Union v. Texas Dep't of Mental Health and Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987).

The assault on the right to privacy in Texas has begun. No longer will this court, so recently a guardian of that liberty, protect the personal autonomy of Texans. While today's opinions deny the right of only one employee to seek redress when an employer circulates incorrect and damaging information, tomorrow other, more universal, personal rights are threatened. The right to privacy, previously defined by this court "as the right of an individual to be left alone, to live a life of seclusion, to be free from unwanted publicity," [1] encompasses a broad range of personal rights, from a married couple's determination to use contraceptives to a woman's decision whether or not to terminate a pregnancy.

This right of privacy is intricately woven into the fabric of our constitutional and

---

**1.** *Billings v. Atkinson,* 489 S.W.2d 858, 859 (Tex.   1973).

common law; the removal of even a few threads creates a danger that the rest will unravel. The threads left hanging today are disparaged as merely loose ones, not yet snipped, as unimportant reinforcing stitches in a large cloth. But privacy is no gunnysack; it is too fragile a right to withstand such rough treatment.

Reaching out to address issues not properly raised, today's writings go to great lengths to question the continuing validity of the false light tort for invasion of privacy, which was previously well established in Texas. Because I believe this court should preserve rather than erode the right to privacy, I dissent.

## I. The Dual Foundations of the Privacy Right

With the declaration that "[t]his court has never expressly held that a tort for false light invasion of privacy exists," 844 S.W.2d at 200, Justices Phillips, Cook, and Hecht[2] carve a major inroad into the right to privacy that has until today been ensured to all Texans. Yet they only accomplish with subtlety what concurring Justices Gonzalez and Cornyn would do more directly. Until now, this court has served as a guardian of a broad right to privacy, assured both by the common law and under the Texas Constitution, including protection against portrayal in a false light.

### A.

While the right to privacy is often traced to an article co-authored by Louis D. Brandeis,[3] the legal and ethical concepts of a right to be let alone predate his explication of the term "privacy." The concept pervades our jurisprudence; both the federal and state protection of a right to privacy arises from a combination of constitutional law, common law, and statutory regulation. Robert Aldrich, *Privacy Protection Law in the United States* 3–9 (Dep't Comm.1982) (The "roots of privacy protection law in this

country are found in the Constitution and the common law as well as in early statutes."); *see also* William L. Prosser, *Privacy*, 48 Cal.L.Rev. 383 (1960). The fundamental nature of this right has been repeatedly recognized. *See Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973) (right of privacy encompasses woman's decision whether or not to terminate pregnancy); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (use of contraception in the home by married persons is protected); *Texas State Employee's Union v. Texas Dep't of Mental Health and Mental Retardation*, 746 S.W.2d 203 (Tex.1987) (privacy right bars mandatory polygraph testing).

The evolving concept of a right to privacy in Texas "exists prior to, and independent of, the Texas Constitution; it is a core democratic value expressed and protected in the [state] constitution." James C. Harrington, *The Texas Bill of Rights* 39 (Supp. 1992). In *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973), this court explicitly declared that *"an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted." Id.* at 860 (emphasis added). Allowing recovery for damages resulting from phone wiretapping, we defined privacy

> as the right of an individual to be left alone, ... the right to be free from the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Id.* We later relied on this same "statement of the Court reveal[ing] that the tort 'invasion of privacy' is actually a recognition of several 'privacy interests' considered to be deserving of protection." *Industrial Found. of the South v. Texas*

---

2. Justice Hecht's "Concurring and Dissenting Opinion" fully embraces the views of Justices Phillips and Cook concerning privacy and differs only as to whether what is termed Mendez's "hypothetical cause of action" should be stopped

now instead of later. 844 S.W.2d at 213 (Hecht, J., concurring and dissenting).

3. Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv.L.Rev. 193 (1890).

*Indus. Bd.*, 540 S.W.2d 668, 682 (Tex.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977) (citing William L. Prosser, *Privacy*, 48 Cal.L.Rev. 383, 389 (1960)). We described four parts of the tort of invasion of privacy: (1) "Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs;" (2) "Public disclosure of embarrassing private facts about the plaintiff;" (3) "Publicity which places the plaintiff in a false light in the public eye;" and (4) "Appropriation, for the defendant's advantage, of the plaintiff's name or likeness." 540 S.W.2d at 682.

This same four-part tort[4] has been adopted by the Restatement (Second) of Torts § 652A (1965), and recognized in other Texas courts. *See* J. Hadley Edgar, Jr. & James B. Sales, 3 *Texas Torts and Remedies* § 53.01[3], at 53–7 n. 11 (1990) (hereinafter Edgar & Sales) (the four parts of invasion of privacy are "accepted by most, if not all jurists and writers today"); *Clarke v. Denton Publishing Co.*, 793 S.W.2d 329, 331 (Tex.App.—Fort Worth 1990, no writ) (*Industrial Foundation* recognized the four parts of a tort of invasion of privacy previously acknowledged in *Billings*); *Justice v. Belo Broadcasting Corp.*, 472 F.Supp. 145 (N.D.Tex.1979) (in *Billings*, Texas recognized all four categories of invasion of privacy, including false light, or logically would under that precedent).

An action for invasion of privacy inclusive of false light has been accepted by a substantial number of other states,[5] and

---

**4.** The essence of the Mendez complaint is that, by publicizing a statement about him that was inaccurate or untrue, Diamond Shamrock is responsible for "an unwarranted invasion of [his] right of privacy." *Billings*, 489 S.W.2d at 860. Some commentators contend that there should be only one broad tort category, with no specifically identified subparts. *See* Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Cognizability and Elements* 2[a], at 39 (1987). The parts and the whole cannot be easily separated, and the subsets sometimes overlap, precluding neat categorization other than under the general heading of invasion of privacy. *See, e.g., Daily Times Democrat v. Graham*, 276 Ala. 380, 162 So.2d 474 (1964); *Recent Developments* at 197 (same facts characterized as both one of false light invasion of privacy and of disclosure of private facts).

**5.** *See, e.g., Phillips v. Smalley Maintenance Serv.*, 435 So.2d 705 (Ala.1983); *Daily Times Democrat v. Graham*, 276 Ala. 380, 162 So.2d 474 (1964); *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989); *McCammon & Assocs. v. McGraw Hill Broadcasting Co.*, 716 P.2d 490 (Colo.App.1986); *Florida Pub. Co. v. Fletcher*, 340 So.2d 914 (Fla.1976), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977); *Byrd v. Hustler Magazine*, 433 So.2d 593 (1983), *review denied*, 443 So.2d 979 (Fla.1984); *Pierson v. News Group Publications, Inc.*, 549 F.Supp. 635 (S.D.Ga.1982); *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68 (1905); *Peterson v. Idaho First Nat'l Bank*, 83 Idaho 578, 367 P.2d 284 (1961); *Holbrook v. Chase*, 12 Media L.Rptr. 1732, 1736 (Idaho Dist. Ct.1985); *Lepold v. Levin*, 45 Ill.2d 434, 259 N.E.2d 250 (1970); *Rinsley v. Frydman*, 221 Kan. 297, 559 P.2d 334 (1977); *Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993 (1973); *Tooley v. Canal Motors, Inc.*, 296 So.2d 453 (La.App.1974); *Hamilton v. Lumbermen's Casualty Co.*, 82 So.2d 61 (La.Ct. App.1955); *Estate of Berthiaume v. Pratt*, 365 A.2d 792 (Me.1976); *Dempsey v. National Enquirer*, 687 F.Supp. 692 (D.Me.1988); *Lawrence v. A.S. Abell Co.*, 299 Md. 697, 475 A.2d 448 (1984); *Kelson v. Spin Publications*, 16 Med. L.Rptr. 1130, 1988 WL 52192 (D.Md.1989); *Robinson v. Vitro Corp.*, 620 F.Supp. 1066 (D.Md. 1985); *Beaumont v. Brown*, 401 Mich. 80, 257 N.W.2d 522 (1977); *Montesano v. Las Vegas Review Journal*, 99 Nev. 644, 668 P.2d 1081, 9 Med.L.Rptr. 2266 (1983); *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1964); *Machleder v. Diaz*, 801 F.2d 46 (2nd Cir.), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1986) (applying New Jersey law); *Devlin v. Greiner*, 147 N.J.Super. 446, 371 A.2d 380 (1977); *Palmer v. Schonhorn Enterprises, Inc.*, 96 N.J.Super. 72, 232 A.2d 458 (1967); *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970); *Gruschus v. Curtis*, 342 F.2d 775 (10th Cir.1965) (discussing New Mexico law); *Ault v. Hustler*, 13 Med.L.Rptr. 1657, 1986 WL 20896 (D.Or.1986); *Tollefson v. Price*, 247 Or. 398, 430 P.2d 990 (1967); *Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959); *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 278 S.E.2d 607 (1981); *Holmes v. Curtis Publishing Co.*, 303 F.Supp. 522 (D.S.C.1969); *Montgomery Ward v. Shope*, 286 N.W.2d 806 (S.D.1979); *International Union v. Garner*, 601 F.Supp. 187 (M.D.Tenn.1985); *Cordell v. Detective Pubs., Inc.*, 419 F.2d 989 (6th Cir.1969) (discussing Tennessee law); *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1983); *Miller v. Charleston Gazette*, 9 Med. L.Rptr. 2540 (W.Va.Cir.Ct.1983); *Harrison v. Washington Post Co.*, 391 A.2d 781 (D.C.Cir. 1978). *See* 57 A.L.R. 4th § 3[a], at 58–77; *Recent Developments* at 196–242. All of these courts "[e]ither specifically or as a matter of necessary implication ... recognized or upheld as cognizable in principle" a cause of action "either expressly designated or inherently sounding in false light." 57 A.L.R. 4th § 3[a], at 58–59.

squarely rejected by only one.[6] Texas is universally recognized by commentators and compendia[7] as well as by the federal courts[8] to have accepted the majority rule recognizing a false light cause of action.

Numerous Texas courts of appeals, following our decisions in *Billings* and *Industrial Foundation*, have applied or recognized the false light cause of action.[9] How odd that the only source of new-found doubt as to the validity of the false light tort is found in today's writings, which coincide with federal retrenchment and deference to the states for the protection of privacy rights.[10]

**B.**

Not only is this otherwise firmly entrenched common law privacy right eroded, but the interrelated constitutional parameters of that right are threatened. This court's commitment to that liberty was, until today, unquestioned. In *Texas State Employee's Union,* when state employees challenged mandatory state use of polygraph testing, this court found a "right of individual privacy implicit among those 'general, great, and essential principles of liberty and free government' established by the Texas Bill of Rights." 746 S.W.2d at 205. The Department's policy was found

---

**6.** Only a sharply divided North Carolina court has squarely declined to adopt the tort, in *Renwick v. News and Observer Publishing Co.,* 310 N.C. 312, 312 S.E.2d 405, *cert. denied,* 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984), and its conclusion has never previously been accepted in any other state.

Explicitly recognizing an existing tort for invasion of privacy, Missouri simply declined to decide whether this tort encompassed or existed separately from false light; either way, a false light action was not precluded. *Sullivan v. Pulitzer Broadcasting Co.,* 709 S.W.2d 475 (Mo. 1986). One of Justice Gonzalez's own sources concedes this question is unresolved in Missouri, *see* Dianne Leenheer Zimmerman, *False Light Invasion of Privacy: The Light that Failed,* 64 N.Y.U.L.Rev. 364, 368–69 (1989), while another maintains that Missouri does recognize the false light action. *See* 57 A.L.R.4th § 3[a], at 65, and cases cited therein.

Similarly, Ohio has refrained from deciding whether or not the tort of invasion of privacy extends to false light actions. *Yeager v. Local Union 20, Int'l Brotherhood of Teamsters,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983); *but see Angelotta v. ABC,* 820 F.2d 806 (6th Cir.1987) (Ohio does not recognize a false light claim).

Neither New York nor Virginia declined to recognize the action; rather, both noted the existence of a statutory basis for the claim. *Arrington v. New York Times Co.,* 55 N.Y.2d 433, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982), *cert. denied,* 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983); *Falwell v. Penthouse Int'l Ltd.,* 521 F.Supp. 1204 (W.D.Va.1981) (noting the similarity to the New York statute).

In *Todd v. South Carolina Farm Bureau Mut. Ins.,* 276 S.C. 284, 278 S.E.2d 607, 610 (1981), the court concluded that "a cause of action was stated" based on pleadings complaining both of publicizing private information and placing the plaintiff in a false light. Other South Carolina cases also appear to recognize the validity of a false light tort. *See* 57 A.L.R. 4th § 3[a], at 67–68.

**7.** *See, e.g.,* Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Cognizability and Elements,* 57 A.L.R. 4th 22, § 3[a], at 68 (1987); Victor A. Kovner, et al., *Recent Developments in Intrusion, Private Facts, False Light and Commercialization Claims,* in 2 *Communications Law 1991,* at 238 (PLI Patents, Copyrights, Trademarks and Literary Property Course Handbook Series No. 324, 1991) (hereinafter *Recent Developments*); *see also* Edgar & Sales §§ 53.05[1]–0.5[4], at 53–30 to 53–38.

**8.** *See, e.g., Moore v. Big Picture Co.,* 828 F.2d 270, 273 (5th Cir.1987); *Faloona v. Hustler Magazine, Inc.,* 799 F.2d 1000 (5th Cir.), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1986); *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Braun v. Flynt,* 726 F.2d 245 (5th Cir.), *cert. denied,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984); *Brueggemeyer v. Associated Press,* 609 F.2d 825 (5th Cir.1980); *Justice v. Belo Broadcasting Corp.,* 472 F.Supp. 145 (N.D.Tex.1979).

**9.** *See Boyles v. Kerr,* 806 S.W.2d 255, 258–59 (Tex.App.—Texarkana 1991, writ granted); *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1 (Tex.App.—Corpus Christi 1991, no writ); *Clarke v. Denton Publishing Co.,* 793 S.W.2d 329, 331 (Tex.App.—Fort Worth 1990, writ denied); *Covington v. Houston Post,* 743 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Floyd v. Park Cities People Inc.,* 685 S.W.2d 96 (Tex.App.—Dallas 1985, no writ); *Nat'l Bonding Agency v. Demeson,* 648 S.W.2d 748, 749–50 (Tex.App.—Dallas 1983, no writ); *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ); *Moore v. Charles B. Pierce Film Enterprises, Inc.,* 589 S.W.2d 489 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Gonzales v. Southwestern Bell Tel. Co.,* 555 S.W.2d 219 (Tex.Civ.App.—Corpus Christi 1977, no writ).

**10.** *See, e.g., Webster v. Reproductive Health Servs.,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989).

to violate the state constitutional "protect[ion of] personal privacy from unreasonable intrusion." *Id.*

Constitutional and common law rights of privacy have evolved together such that constitutional implications are frequently discussed by commentators in analyzing the false light tort. *See* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* 866–68 (5th ed. 1984) (hereinafter *Prosser & Keeton*) (constitutional protection "embraces ... interests protected by the common law action"); *see generally* Alfred Hill, *Defamation and Privacy under The First Amendment,* 76 Colum.L.Rev. 1205 (1976). State constitutional privacy guarantees have accordingly provided a basis for recognizing the false light cause of action. *See, e.g., Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781, 788 (1989).

Disregarding the constitutional dimensions of privacy facilitates the objective of the five members of this court who would substantially revise prior caselaw based on an arguably less fundamental common law foundation while narrowly limiting any constitutional privacy right to protection from governmental agency polygraph tests.[11] Today's attempt to pigeonhole privacy jeopardizes important interests—the right to choose whether to carry a child to term, to avoid unwarranted governmental invasions of privacy, to maintain some semblance of personal freedom in the technology age— by a mere declaration that at most these arise only from "common law" and possess no "constitutional" dimension. Justices Gonzalez and Cornyn seek to distract attention from this reality in their unsupported declaration that "this case has absolutely

nothing to do with constitutional privacy rights." 844 S.W.2d at 203, n. 1 (Gonzalez, J., concurring and dissenting). Today's writings provide a clear indication of the newly weakened status of all privacy rights in Texas at the hands of five members of this court. Today, the threads of the interwoven fabric of the common and constitutional law are unraveled leaving peepholes intruding into the privacy rights of Texans.

Each of the commentaries relied upon by Justices Gonzalez and Cornyn as questioning false light actions also includes a direct attack on the very concept of a right to privacy. These justices join those who view not just false light but the entire concept of privacy in tort law as infused with "pettiness," unable to "function as a constitutional concept" and who conclude that "the right of privacy ... failed in three-quarters of a century *to amount to anything.*" Harry Kalven, Jr., *Privacy in Tort Law—Were Warren and Brandeis Wrong?,* 31 Law & Contemp.Probs. 326, 327, 328, 341 (1966) (emphasis added). Surely the landmark holding in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), grounding on this very right to privacy a woman's vital right to choose whether or not to terminate her pregnancy, and our subsequent ruling in *Texas State Employee's Union* make this view untenable. Today's writings would apparently return us to a time when enforcement of privacy rights was unknown.[12]

While false light shares similarities with the defamation tort, the two are demarcated by significant differences:

---

**11.** The affirmative grant of rights in state constitutions often extends protections to individuals even absent state action. *See, e.g., Porten v. University of San Francisco,* 64 Cal.App.3d 825, 134 Cal.Rptr. 839, 842 (1976) (applying privacy guarantee in Cal. Const. art. I, § 1 to private university); *Leach v. Drummond Medical Group, Inc.,* 144 Cal.App.3d 362, 192 Cal.Rptr. 650, 658 (1983) (applying California petition clause, Cal. Const. art. I, § 3, in dispute against private medical group); *Walinski v. Morrison & Morrison,* 60 Ill.App.3d 616, 18 Ill.Dec. 89, 91–92, 377 N.E.2d 242, 244–45 (1978) (allowing sex discrimination claim against private firm under Ill.Const. art. I, § 17); *Jones v. Memorial Hosp.*

*Sys.,* 746 S.W.2d 891 (Tex.App.—Houston [1st Dist.] 1988, no writ); *see also* Christine M. Durham, *Obligation or Power? The New Judicial Federalism and the Policy-Making Roles of State Supreme Courts,* 2 Emerging Issues in State Const. L. 219, 229 (1989).

**12.** Frequent reference is also made to the writing of Professor Zimmerman, who has been an outspoken critic of tort protection of privacy rights. *See* Diane L. Zimmerman, *Requiem for a Heavyweight: A Farewell to Warren and Brandeis's Privacy Tort,* 68 Cornell L.Rev. 291 (1983).

*It is not ... necessary to the action for invasion of privacy that the plaintiff be defamed.* It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position. When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated *affords a different remedy, not available in an action for defamation.*

Restatement (Second) of Torts § 652E, comment b (emphasis added). The remedy is different because "the two torts exist to redress different types of wrongful conduct." *Godbehere*, 783 P.2d at 787; *see also* Joseph J. Hemmer, Jr., *The Supreme Court and the First Amendment* 211 (1986) ("False light involves the publication of false information about an individual, whether it is defamatory or not."); Edgar & Sales § 53.05940, at 53–57 (discussing "some fundamental differences between the two torts").[13]

The critical conceptual distinction now disregarded is that defamation law protects against injury to reputation; false light, like any other privacy protection law, preserves the right to be let alone. *See Godbehere*, 783 P.2d at 787; *Renwick*, 312 S.E.2d at 415 (Meyer, J., concurring and dissenting); *Prosser & Keeton* at 864; *Recent Developments* at 110; Wade at 1094; Thomas I. Emerson, *The Right to Privacy and Freedom of the Press*, 14 Harv.C.R.–C.L. L.Rev. 329, 333 (1979); *see also* 57 A.L.R. 4th § 6, at 88–90, and cases cited therein. These are two separate interests. Two different injuries are suffered—with false light "[i]t is enough ... that the publicity [causes] severe emotional distress," while with defamation there is re-

quired a showing of special damages arising from "harm to reputation." *Prosser & Keeton* at 866. These differences weigh against elimination of the false light tort on grounds of overlap.

### C.

A cause of action that denies parties, particularly media defendants, a truth defense has the potential of chilling speech. That is precisely why we in the past have applied special substantive free speech rules in addition to procedural requirements. *See Star Telegram v. Walker*, 834 S.W.2d 54 (Tex.1992) (freedom to print already public information). There is no reason why such special rules cannot be applied in the false light context,[14] particularly when media defendants are involved.[15]

An appropriate standard for liability such as that "the actor had knowledge of or acted in reckless disregard," Restatement (Second) of Torts § 652E(b), has been found to offer ample protection for free expression and to discourage any false light litigation explosion. *See Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d at 788–89 (finding the Restatement's standards adequate to preserve free speech). In no way does the false light action "restrict speech in any manner beyond our existing tort law;" indeed, Justices Gonzalez and Cornyn amply demonstrate that "many jurisdictions have preserved their protection of speech by [adopting reasonable limitations on] false light actions." 844 S.W.2d at 210 (Gonzalez, J., concurring and dissenting). One leading commentator and advocate for freedom of expression has concluded that "false-light invasion of privacy actions ... serve the state interests in deterring the publication of damaging false

---

**13.** Indeed, an article relied on to suggest that the two torts are identical clearly praises any such overlap while noting that "[t]he difference between the two torts is now well known." John W. Wade, *Defamation and the Right to Privacy*, 15 Vand.L.Rev. 1093, 1094, 1120–22 (1962).

**14.** The cases cited in support of this proposition do not criticize the false light tort, but rather apply exactly the type of restrictions that the concurrence implies to be lacking. *See Lerman*

*v. Flynt Distrib. Co.*, 745 F.2d 123, 135 (2d Cir. 1984); *Berry v. NBC, Inc.*, 480 F.2d 428, 431 (8th cir.1973).

**15.** These rules should not, however, be overly restrictive. As at least one observer has remarked, "the areas of conflict between the right of privacy and freedom of the press are quite limited." Thomas I. Emerson, *The Right to Privacy and Freedom of the Press*, 14 Harv.C.R.–C.L.L.Rev. 329, 331 (1979).

information and protecting reputation." Rodney A. Smolla, *Emotional Distress and the First Amendment: An Analysis of Hustler v. Falwell*, 20 Ariz.St.L.J. 423, 441 (1988).[16]

This liability standard also comports with the broad guarantees of article one, section eight of the Texas Constitution, that persons speak freely, unhindered by interference from government or private persons, but with post-speech remedies for abuse of that privilege. *See Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex.1992, orig. proceeding).[17] Rather than striking a balance that bolsters freedom of expression, today's action simply denigrates the right to privacy.

## II. Intentional Infliction of Emotional Distress

Conceding that recovery for intentional infliction of emotional distress is widely permitted, *see* 844 S.W.2d at 202 & n. 3,[18] and aware that neither the parties nor amicus argue that Mendez has failed to plead a cause of action, Justice Phillips nevertheless declares Mendez has no claim as "a matter of law." *Id.* at 202. "Even if ... true [that Mendez's employer falsely depicted him as a thief to coworkers and his community] this conduct is not sufficiently outrageous to raise a fact issue" for jury consideration. *Id.* "Not sufficiently outrageous"? What could be more outrageous than an employer falsely and deliberately blackening the name of a worker to coworkers and other potential employers?

The court of appeals properly reviewed the evidence presented in this case to determine whether liability attached. But instead of an analysis of specific evidence, today we receive broad pronouncements that serve to strangle all potential future litigation of this type. Under today's restrictive interpretation of "outrageous," even an employer's admission to having falsely advertised that an employee was a thief would not be viewed as sufficiently "intolerable" to justify legal recourse. *Id.* In short, under today's opinions, a worker's good name legally counts for nothing.[19]

## III. Disposition

Today's misguided writings lead to an equally misguided result. Mendez is sent back to the trial court to submit to the jury a question about a tort, the existence of which two members of this court refuse to recognize, four refuse to discuss, and the remaining three say has already been recognized by this court. This case is based upon events that occurred seven years ago; perhaps in another seven years, after pursuing another trial and appeal, these parties will finally be accorded a real answer.

The multiple waivers of error by Diamond Shamrock should dictate that the judgment for Mendez be affirmed. Not until coming to this court did Diamond Shamrock ever suggest that a false light action was unavailable under Texas law. No such objection was lodged at any time in either the trial court or the court of appeals. Nor did Diamond Shamrock in objecting to the false light jury instruction tender any proper alternative instruction as required by Tex.R.Civ.P. 278. While these failures dictate against a remand, certainly rendition against Mendez as urged both by Justice Hecht, 844 S.W.2d at 213 (Hecht, J., concurring and dissenting) (referring to the *Mendez* cause of action as merely "hypo-

---

**16.** Professor Smolla further concludes that "[w]hen the plaintiff is a private figure and the speech does not involve any issue of public concern, ... no first amendment restrictions will apply, relegating ... protection solely to that available under applicable common law rules." *Id.* at 467.

**17.** For additional reasons supportive of such a standard, see Rodney A. Smolla, *Law of Defamation* § 10.02[3][b], at 10–11 (1992).

**18.** *See also* Restatement (Second) of Torts § 46 (1965).

**19.** The claim that this result is necessary to safeguard the employment-at-will doctrine, 844 S.W.2d at 202, is also misplaced. Under this long-established doctrine, *see East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99 (1888), Mendez could be dismissed for some reason or no reason. What is in question here is not the power to terminate but whether, once properly terminated, an employee can thereafter be blacklisted by deliberate falsehoods.

thetical"), and Justices Gonzalez and Cornyn, *id.* at 203 (Gonzalez, J., dissenting), is even more inappropriate. This suggested disposition is propelled by reaching out to decry the false light tort in reliance on a recent decision unfairly refusing to remand for a new trial. *See Westgate Ltd. v. State,* 843 S.W.2d 448, 459 (Doggett, J., dissenting).

The suggestion that Mendez could have anticipated the standard adopted here, 844 S.W.2d at 213 (Hecht, J., concurring and dissenting), ignores the state of the law at the time this case was tried.[20] When the elements of the cause of action are unsettled and error has been preserved, remand is appropriate. *See Caller–Times Publishing Co. v. Triad Communications, Inc.,* 826 S.W.2d 576, 588 (Tex.1992) (on motion for rehearing).

### IV. Conclusion

Little did Roque Mendez know that the few discarded nails he threw into his lunch bag rather than the trash bin would be used to begin nailing shut the coffin lid on privacy actions. I certainly reject today's writings, which signal the commencement of the not so slow death of this vital right. The trial court's judgment should be affirmed in full; the right of privacy should be fully guaranteed.

MAUZY and GAMMAGE, JJ., join in this dissenting opinion.

### ON MOTION FOR REHEARING

Motion for rehearing overruled.

### CONCURRING OPINION ON MOTION FOR REHEARING

CORNYN, Justice, concurring.

I write only to respond to the dissenting justice's accusations in his opinion on mo-

tion for rehearing that the court has "once again demonstrate[d] its lack of concern for important human rights," *supra* at 221, that the court has "erect[ed] a double standard for justice in Texas," *supra,* at 222, and that the court is "seeking ways to subvert [the right to trial by jury]." *supra* at 223.

It is not unusual for judges to disagree about the merits of a contested legal issue; it happens everyday in this court and in courts throughout the nation. It has obviously occurred in this case. It is another thing altogether for a judge to declare himself to be the champion of one side of a case, while ignoring or summarily dismissing the legal rights of an opposing party. Texans expect and are entitled to better from the individuals to whom they have entrusted the solemn duty of administering equal justice under law than to resort to personal attacks on those with different views of the law.

It is a judge's job to carefully weigh competing interests and strike a delicate, perhaps imperfect, balance between those competing interests. That is what the court has done in this case. Obviously, the dissenting justice disagrees. But as Roscoe Pound, Dean Emeritus of the Harvard Law School, has written:

The opinions of the judge of the highest court of a state are no place for intemperate denunciation of the judge's colleagues, violent invective, attributing of bad motives to the majority of the court, and insinuations of incompetence, negligence, prejudice, or obtuseness of fellow members of the court.

Roscoe Pound, *Cacoethes Dissentiendi: The Heated Judicial Dissent,* 39 A.B.A.J. 794, 795 (Sept. 1953). The dissenting justice's remarks represent another example of an unfortunate tendency toward intoler-

---

**20.** Of the three Texas appellate opinions that have before applied this standard, two were not reviewed in this court, *Covington v. Houston Post,* 743 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ), and the third was announced only *after* trial in this case. *Clarke v. Denton Publishing Co.,* 793

S.W.2d 329, 331 (Tex.App.—Fort Worth 1990, writ denied). Mendez only followed the Fifth Circuit in assuming that Texas, based on existing law, would apply a negligence standard in false light actions brought by a private individual. *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1092 (5th Cir.1984). *See also* Edgar & Sales at § 53.05[3], at 53–36.

ance for honest differences of legal opinion on this court.[1]

HECHT, J., joins this concurring opinion on motion for rehearing.

## DISSENTING OPINION ON MOTION FOR REHEARING

DOGGETT, Justice, dissenting.

In its decision today, the majority once again demonstrates its lack of concern for important human rights, so recently exhibited in *Boyles v. Kerr*, 1992 WL 353277 (Tex.1992) (refusal to permit woman surreptitiously videotaped during sexual intercourse to recover for negligent infliction of emotional distress).

The declared victor in this cause, Diamond Shamrock, has filed a motion for rehearing that admits the weakness of the limited legal analysis employed by the majority to justify a significant weakening of the right to privacy of all Texans. While contending that the interests of "judicial economy would be well-served by [a straightforward death sentence for the false light theory of invasion of privacy] now, instead of several years later," Diamond Shamrock's motion is highly insightful. Citing *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 682 (Tex.1976), it concedes "that this Court had recognized the [false light] theory of recovery as one of the four usual categories of invasion of privacy" and notes that "at the time that this case was tried, several appellate courts

had also discussed the theory of recovery in various contexts." *See Clarke v. Denton Publishing Co.*, 793 S.W.2d 329, 331 (Tex.App.—Fort Worth 1990, writ denied); *Covington v. Houston Post*, 743 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ).[1] Diamond Shamrock, moreover, located an additional commentator, a leading Texas insurance defense attorney, who reached the same conclusion regarding the validity of a false light cause of action in Texas. *See* Jerry A. Gibson, *The Developing Law of Tort Liability for Non–Physical Harm: A Guide for the Texas Practitioner*, 18 St. Mary's L.J. 889, 928 (1987). Diamond Shamrock's argument conflicts with the reasoning underlying the majority's opinion.

Indeed, protection of privacy through the false light tort was so well-established in Texas at the time of the trial of this case that Diamond Shamrock explains its failure to object to the submission of a related jury charge as follows:

> since numerous cases discussed the theory of recovery [for false light], the probable response to an objection (*i.e.*, that this Court had not expressly recognized the theory of recovery) would have been that the objection was frivolous and groundless.

Although I disagree with the application of its research, Diamond Shamrock is absolutely correct in one important particular—

1. *See e.g., Boyles v. Kerr*, 1992 WL 353277 (Tex. 1992) (Doggett, J., dissenting) ("the majority rewrites Texas law and recants the respect for human dignity affirmed by this court in *St. Elizabeth Hospital* [*v. Garrard*, 730 S.W.2d 649 (Tex.1987) ]"); *Elabaor v. Smith*, 845 S.W.2d 240 (Tex.1992) (Doggett, J., dissenting) ("plunging helter-skelter into uncharted territory to save another medical doctor that a jury found to have committed malpractice, the majority writes without regard to the chaotic effect of its ruling...."); *Russell v. Ingersoll–Rand*, 841 S.W.2d 343 (Tex.1992) (Doggett, J., dissenting) ("henceforth any action for the death of a loved one can be barred before it accrues.... That is the objective of another injustice committed by a majority that is not slowed in the slightest either by a statute ... or its own recent writing to the contrary"); *Walker v. Packer*, 827 S.W.2d

833, 846 (Tex.1992) (Doggett, J., dissenting) ("many judicial excesses far beyond the scope of anything alleged in this particular case will henceforth receive only an official nod and wink from the Texas Supreme Court"); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 13 (Tex.1991) (Doggett, J., dissenting) ("The court's growing fear that victims of injustice will get too much justice causes it to confer a windfall on wrongdoers"); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 367 (Tex.1990) (Doggett, J., dissenting) ("the court's opinion can rightly be recorded as one of the most anti-family decisions in recent memory").

1. As noted in my original dissent, these authorities were among the nine Texas appellate opinions applying or recognizing the false light cause of action. 844 S.W.2d at 216 n. 9.

before any other court its objection would be disregarded as "frivolous and groundless." Unfortunately yesterday's admittedly groundless claim has become a battering ram in the hands of the majority as they assault the right to privacy so vital to Texans.

\* \* \* \* \* \*

My remarks on the merits of rehearing this cause are set forth in full above, and speak for themselves. Because this terse writing has apparently unsettled Justice Cornyn, I append the following in reply to his concurrence:

Completely unable to address this inconsistency between the reasoning of the majority opinion and the argument advanced by the very party who prevailed under it, Justice Cornyn avoids any pretense of discussing the merits of this case in order to deliver a short lecture on the proper role of a judge. While this is certainly an appropriate question to consider, rehearing on a cause about which Justice Cornyn has not previously written seems hardly the most appropriate context for its consideration. I agree completely that "It is a judge's job to carefully weigh competing interests and strike a delicate, perhaps imperfect, balance between those competing interests." At 220 (Cornyn, J., concurring opinion on motion for rehearing).

In "strik[ing]" a "balance," *id.*, I find it is often appropriate to seek a reasonable course of moderation between conflicting interests. In *Boyles v. Kerr* (Tex.1992) (Doggett, J., dissenting), instead of completely barring any recovery for negligence resulting in emotional distress, I urged a "more moderate course crafted from Texas precedent and a growing body of law nationally that would limit liability for the trivial while recompensing the truly grievous." Similarly, in the instant case, I counseled moderation in reaffirming recognition of the false light tort while adding appropriate safeguards to preserve free speech rights.

Unfortunately, the majority has increasingly rejected moderation and balance in favor of the erection of a double standard of justice in Texas. "Mandamus [has already been] officially declared a one-way street in the Texas courts—our judiciary can help to hide [information] but not to detect." *Walker v. Packer*, 827 S.W.2d 833, 846 (Tex.1992, orig. proceeding) (Doggett, J., dissenting). Broad-form jury submission can be relied upon by a losing defendant to invalidate a jury verdict, but not by a prevailing plaintiff to uphold one. *Compare Keetch v. Kroger*, 845 S.W.2d 262, 267 (Tex.1992) (Mauzy, J., dissenting), *with State Dept. of Highways v. Payne*, 838 S.W.2d 235 (Tex.1992). Emergency relief will be swiftly granted to those who wish to hide court documents, but slowly denied to those who seek access to trial exhibits. *Compare Eli Lilly & Co. v. Marshall*, 829 S.W.2d 156 (Tex.1991), orig. proceeding) (Doggett, J., dissenting to order granting leave to file petition for writ of mandamus), *with Dallas Morning News v. Fifth Court of Appeals*, 842 S.W.2d 655, 663 (Tex.1992, orig. proceeding) (Doggett, J., dissenting to order overruling motion for leave to file petition for writ of mandamus).

In achieving a balance, a judge should maintain reasonable respect for precedent so as to assure stability and predictability in the law. Judicial restraint must be exercised rather than judicial result. Both my original opinion in this cause and that issued today reflect this concern. Unfortunately, the concept of reliance on the prior decisions of Texas courts has long since ceased to pose any significant restraint on this majority. *See, e.g., Boyles v. Kerr* (Tex.1992) (Doggett, J., dissenting) (objecting to majority's overruling of landmark Texas Supreme Court decision permitting recovery for negligence resulting in emotional distress); *Walker v. Packer*, 827 S.W.2d 833, 846 (Tex.1992, orig. proceeding) (Doggett, J., dissenting) (noting majority's "mass execution of precedent," encompassing "a dozen or more Texas Supreme Court cases and countless decisions of the courts of appeals"); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 846 (Tex.1992) (Doggett, J., dissenting)

(discussing rejection by majority of its own decision issued less than one year previously); *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex.1991) (Doggett, J., dissenting) (court disregards its own recent precedent, looking instead to overruled case).

Moreover, as judges, we should perform our duties in a timely and responsible manner. Yet the delay in issuing opinions in this court continues uncorrected, despite my effort to achieve more prompt resolution of our docket. *See Schick v. Wm. H. McGee & Co.*, 843 S.W.2d 473, 473 (Tex. 1992) (Doggett, J., concurring opinion on order granting motion to dismiss), and cases cited therein.

A judge should support our right to trial by jury instead of seeking ways to subvert and limit that right. Long ago, Texans recognized the paramount importance of this guarantee, stating in their grievances against the Mexican government that:

It has failed and refused to secure, on a firm basis, the right of trial by jury, that palladium of civil liberty, and only safe guarantee for the life, liberty, and property of the citizen.

The Declaration of Independence of the Republic of Texas (1836), reprinted in Tex. Const. app. 519, 520 (Vernon 1955). Here, Roque Mendez convinced a panel of Texas citizens that actions of Diamond Shamrock had resulted in injury to him. The vote of those twelve people is rendered a nullity today, as so increasingly occurs with this majority. *See May v. United Services Ass'n of America*, 844 S.W.2d 666, 674 (Tex.1992) (Doggett, J., dissenting), and cases cited therein.

When a judge rejects the path of moderation, ignores precedent, loses confidence in our right to trial by jury, while at the same time making a calculated assault on the right of privacy, he may feel a need for some cover. While rather thin camouflage, the concurring opinion represents little else. If withstanding such criticism is the cost of defending on this court our liberties, it is a small price to pay.